KAUCHER, HODGES & COMPANY *v.* BUCKEYE COTTON OIL COMPANY.

Opinion delivered February 27, 1922.

1. CONTRACTS—CONSTRUCTION OF BUILDING—COST.—Where a contractor was employed to erect a building during the war .for certain percentages of the construction cost, the employer undertaking to pay for all material and labor, and the contractor executed a guaranty bond that the entire cost would not exceed an estimated sum, but stipulated that the guaranty "is made during existing conditions and does not apply should the work be interfered with or cost increased by any act of Government or any unforeseen elements or acts of God," *held* that the contract contemplated that there might be a change of conditions in respect to the cost of labor, and that to such increased cost should be added the percentages specified.

2. CONTRACTS—CONSTRUCTION.—Under a contract which named a unit price for concrete work at 30 cents per yard, *held*, under the evidence that the price for concrete work did not include compensation for forms.

3. CONTRACTS—CONSTRUCTION OF BUILDING—COST PLUS PLAN.—Where a building was constructed on the basis of construction cost plus certain percentages, and the contractor guaranteed the entire cost not to exceed a sum named, but stipulated that the guaranty was made during existing conditions, and did not apply in case the work was interfered with or the cost increased by any act of Government or any unforeseen elements or acts of God, the exceptions in the guaranty did not cover additional cost occasioned by inefficiency of labor.

Appeal from Pulaski Chancery Court, *J. E. Martineau,* Chancellor; affirmed.

*W. M. Hall* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Cockrill & Armistead* and *John W. Newman,* for appellee.

McCULLOCH, C. J.   Appellants are building contractors, and in March, 1918, entered into a written contract with appellee for the construction of a reinforced concrete building near the city of Little Rock.   They agreed with appellee to ''furnish the detailed plans, the building for a compensation equal to eight per cent. of the actual construction cost.''   Appellee was, under the contract, to furnish and pay for all material and labor. Appellants' estimate of the cost of the building, including their own compensation, was the sum of $76,463, and in the contract appellants gave a guaranty that the cost would not exceed that sum, but the guaranty was qualified by a clause in the contract as follows:

''It is further understood that this guaranty is made during existing conditions and does not apply should the work be interfered with or cost increased by any act of Government or any unforeseen elements or acts of God.''

Appellants gave a bond, executed by a surety company, which contained the following clause:

''Fifth.   It is hereby understood and agreed that this bond is executed by the surety and accepted by the obligee with the understanding that the contract which it guarantees is made in contemplation of the existing con-

ditions as to the cost of labor, material, equipment and supplies, and the cost of transportation, and the total cost of $76,463 named in said contract shall not apply, but shall be increased proportionately to the increased cost of completing the contract in the event of an increase in the cost of labor, material, equipment, supplies or transportation, or in the event of the work being interfered with or the cost increased by any act of the Government or any unforeseen elements, or act of God, or for any other reason for which the principal is not responsible."

There was a provision in the contract for extra work as follows:

"Miscellaneous:  In case additional excavation work and concrete is needed, unit prices on same to the owner to be as follows:

"Excavation at 75c per cubic yard.

"Concrete at 30c per cubic yard."

The building was completed in accordance with the terms of the contract, but the cost thereof was more than $20,000 in excess of the amount guaranteed by appellants, in addition to the cost of added work falling within the specification for extras.  Appellee instituted this action against appellants and the surety on their bond to recover the additional cost of the building over the amount of the guaranteed cost, and appellants defend on the ground that the increased cost resulted from changed conditions with respect to prices of material and labor and inefficiency of labor.

There is also a disputed item in the account between the parties with respect to the cost of furnishing "forms" for extra concrete.  This item amounted to $3,827.97, and it is the contention of appellants that this was not included within the unit price of 30 cents per cubic yard as specified in the contract.  The contention of appellee is that the specified price for concrete was intended to include the cost of the "forms," and that that clause of the specification should be construed to mean the price of concrete in place.

The action was instituted in the circuit court of Pulaski County, and by consent of parties was transferred to the chancery court, and proceeded there to a final decree. After the testimony was introduced, the parties entered into a written stipulation in which it was agreed that the aggregate of the items of increase of cost of labor claimed by appellants in the construction of the building amounted to $7,032.16, and that the cost, including labor and material, was the sum of $3,827.97, as stated in appellants' account. Appellants claim that to the item of increased cost of labor there should be added the regular commission of 8 per cent. specified in the contract and also the 11.70 per cent. commission to cover overhead expenses, but appellee disputed the right of appellants to include these percentages in the increased estimate of cost. The stipulation was, further, that if the court allowed those claims of appellants, but disallowed their claim for increased cost alleged to be due on account of inefficiency of labor, the amount of the decree in favor of appellee should be $11,-076.38. The court in its final decree refused to charge appellants with the items of increased cost of labor as set forth in the stipulation, including the percentages referred to for compensation and overhead expenses, but charged appellants with the sum of $11,076.38, increased cost that appellants contend was caused by inefficiency of labor, and rendered a decree against appellants for that sum on its contract of guaranty. The court allowed appellants a credit for the sum claimed as the cost of furnishing "forms" for concrete. Appellants prosecuted their appeal from that part of the decree adverse to them, and appellee has cross-appealed.

There was evidence adduced which supports the finding of the court that the aggregate amount in the stipulation of counsel was expended for increased cost of labor.

The contract provides that the guaranty "is made during existing conditions and does not apply should the work be interfered with or costs increased by any act

of Government or any unforeseen elements or acts of God.'' Counsel for appellee contend that according to the proof the cost of labor was not increased by the act of Government in pursuing its war preparations in and about Little Rock, but the answer to this contention is that the exception is not based entirely on interferences or increases by ''act of Government,'' but it provides that the guaranty does not apply to changed conditions ''from any unforeseen elements,'' and the proof is abundant that there was a change of conditions with respect to the cost of labor, both skilled and unskilled, after the contract was entered into and before the building was completed. We are of the opinion also that the court was correct in adding to this increased cost the percentage specified for compensation to the contractors and overhead expenses. The contract provided for the payment of these percentages, and this applied to the percentages on such part of the increased cost as did not fall within the scope of appellant's guaranty.

We are also of the opinion that the court was correct in allowing appellants credit for the cost of furnishing the ''forms'' for the extra concrete. This part of the contract appears in the specifications, which also contains a specification for the concrete work called for in the plans. There was a separate specification for ''concrete work'' and for ''forms.'' One specification provided how the concrete should be mixed, and the kind of cement to be used, and the kind of sand and rock. The other specification provided how the forms should be constructed, and where the lumber therefor should be delivered. The specification for extra concrete work must be read in the light of these separate specifications, and, when this is done, it seems clear that it was not intended to include the cost of making the ''forms'' in the specified unit price for extra concrete. Moreover, the cost of making the forms amounts to so much in comparison with the price for the extra concrete work that it does not seem reasonable that it was to be included in the unit price of 30 cents per

cubic yard, as specified, for this is only 5 cents per cubic yard above the estimated cost specified in the contract, which did not, of course, include the cost of the forms. Another thing which appears to make it plain that the parties did not intend to include the cost of forms in the price specified is that at that time it could not be known what amounts of extra concrete would call for the use of forms and the kind of forms that would be called for. Upon the whole, we are convinced that the chancellor was correct in his construction of this feature of the contract.

We are also of the opinion that the court was correct in charging appellants with the additional cost of $11,076, which appellants claim was caused by inefficiency of labor. Counsel for appellants argue that, under the terms of the contract, the guaranty did not apply at all if there was any change in the conditions which caused an increase in the cost of the building, and that since there was an increase in cost, at least to the extent of the increased cost of labor, this completely displaces the guaranty, so that it does not apply. This is not, we think, a proper interpretation of the contract. It does not mean that there shall be no guaranty if there was an increase, but that the guaranty should not apply to the extent caused by changed conditions; in other words, that the guaranty should not apply to the increase in cost caused "by reason of unavoidable interferences or by the act of Government or other unforeseen elements, or the act of God." It would thwart the obvious meaning of the parties to hold that this language meant that there should be no guaranty if there was increased cost at all from the causes stated in the exception. What the language means is that if there was any increase in the cost of the building aside from those causes stated in the exception, appellants should be responsible for it under their guaranty. Now, the language of the exception does not, we think, include any estimated increased cost by reason of the inefficiency of labor. The increased cost of labor and material was easily ascertain-

able and was within the contemplation of the parties at the time the contract was entered into. It was their manifest intention to exempt appellants' liability on account of increased cost of the building from those causes. But the question of the inefficiency of labor is a thing so vague that it could not have been within the contemplation of the parties that an estimate should be taken of the degree of inefficiency of labor during the construction of the building. In fact, that was one of the things appellants undertook to do, and were paid to do, in selecting the right kind of labor, and there is no proof in this case which would justify the finding that they could not have done that so as to reduce to a minimum in degree the inefficiency of labor. The proof does, indeed, show that at that time conditions were such, not only in Little Rock but everywhere, that labor as a whole was inefficient, but it does not show that efficient labor, both skilled and unskilled, could not be obtained at the prevailing schedule of prices. The proof also shows beyond a doubt that this lowering of the efficiency of labor began more than a year before this contract was entered into, and if it increased after that time it was only in degree. At any rate, we think that under the contract the selection of efficient labor was one of the things that appellants undertook, and it was not exempted from its guaranty on account of losses from that cause. The interpretation of the contract must be drawn from its own language, and the peculiar circumstances of the case. It is therefore unnecessary to cite authorities announcing general principles of law on this subject.

The conclusion therefore is that the decree of the chancery court was correct, and the same is, both upon the original appeal and the cross-appeal, affirmed