IDA VENTERS, RESPONDENT, v. B. E. BUNNELL AND O. S. LANHAM, APPELLANTS.—93 S. W. (2d) 70.

Springfield Court of Appeals.    March 3, 1936.

Rehearing denied.    April 15, 1936.

*E. L. McClintock* for appellants.

*John H. Bradley* for respondent.

BAILEY, J.—This is an action by the widow of John Venters, deceased, to recover damages for his death resulting from personal injuries received when he was struck by an automobile of defendant B. E. Bunnell and being driven at the time by his employee, and codefendant, one O. S. Lanham. By her petition, plaintiff alleges several grounds of negligence, but since the case was submitted solely upon the pleaded humanitarian or last clear chance doctrine, no further reference to the pleadings is necessary.

The trial court's action in refusing defendant's instruction in the nature of a demurrer to the evidence offered at the close of plaintiff's case and again at the close of the whole case is assigned as error. This assignment necessitates a review of the evidence, and of course, that means the evidence most favorable to plaintiff, respondent here.

John Venters, deceased, and plaintiff, had their home about one mile and a half east of Kennett, Missouri. At the time of his death deceased was fifty-seven years of age, an able bodied man in full possession of his faculties. Defendant B. E. Bunnell is a contractor living at Cape Girardeau, Missouri, and at the time of the accident had in his employ one O. S. Lanham, also a defendant. On the 11th day of November, 1933, Lem Akers, who also lived east of Kennett, was driving in his wagon loaded with wood and being pulled by a span of mules, and was travelling in a westerly direction toward Kennett on the main highway between that city and Hayti. Mr. Akers, just prior to the accident, had "met up with" deceased Venters on the highway and invited him to ride on the loaded wagon. Deceased accepted the invitation and rode about a quarter of a mile before he got off at the time and place of the accident.

Mr. Akers, who was a witness for plaintiff, testified in part as follows:

"He was sitting on the left hand side of the wagon, midway of the wagon, sitting on the poles; that is the south side of the wagon. I was in front driving the mules in an ordinary walk; it was a sunshiny day, between one and two o'clock. There is a tree on west of where Venters was struck, on the south side of the road, also a telephone pole west of the tree. Where I was driving the road is concrete and on the south side the road is gravel, and south of the gravel is a dirt shoulder, and then a ditch which had a slight slope but was about filled up, and no fence on the south side. The ditch has been re-dug and a new bridge put in about a month ago. I would judge the gravel part of the road is about twelve, fifteen or sixteen feet wide and the dirt shoulder about three feet; it is about six feet on this sloping place to the ditch. Mr. Venters didn't jump off the wagon, he just stepped off. I saw Mr. Lanham's car coming east from the west on the gravel part of the highway at twenty-five to thirty miles an hour, to the best of my judgment. He was driving a Model A Ford; no one was with him. I would say Mr. Lanham and his car was about one hundred feet away when Venters stepped off the wagon. I didn't hear any horn on Lanham's car. I could not tell that the car slowed down. I didn't see the car turn to the right or left. I was looking at the car. When Venters was struck he was about eight or ten feet behind my wagon, as I was moving. Venters was about four feet south of the concrete when the car hit him. He was knocked or carried about fifteen feet from where the car struck him to where I picked him up. There was nothing that I know of to the right of where Venters was hit to prevent the car being turned to the right. The only way to get in there from the highway was to cross the ditch; the bridge was not in condition to drive over but there was a roadway seven or eight feet east of the bridge to cross the ditch. I picked Venters up and his leg was broken, his hands mashed and face bruised, and we took him to town. There was nobody present but Mr. Venters, Mr. Lanham, myself and my boy, nine years old. After Lanham's car struck defendant he drove down the road a piece and turned around and put him in the car and took him to Kennett to the doctor's office."

On cross-examination Akers gave it as his opinion that, considering the distance the car was from the wagon at the time Venters got off, and considering the speed of the car, it would not have been possible to have stopped the car, but qualified this conclusion by the statement, "unless he had awfully good brakes." On redirect examination he testified that he believed a Ford automobile, Model A, equipped with good brakes, running twenty-five miles to thirty per hour, could be stopped within one hundred feet.

John Noble testified that he measured the highway at the place of the accident and found that the concrete was nine feet wide, the gravel seventeen feet wide and from the edge of gravel to dirt shoulder

it was sixteen feet. He further testified, over defendant's objection, that he made a test on this same road with a Model A Ford, 1929 Model, equipped with reasonably good brakes and in loose gravel, and that the car could be stopped in fifty feet. Russell Venters testified to the same effect.

For defendants, O. S. Lanham, the driver of the car, gave testimony indicating that he did all he could to stop the car after he saw deceased; that deceased jumped right in front of the car when the car was twenty-five or thirty feet from him; that deceased first started across and then turned back. He further testified:

"I had fairly good brakes on the car and would have avoided the collision, if it had been possible to do so. I applied the brakes just as soon as I saw him in the road. I think I went twenty or twenty-five feet the other side of where I hit him before I stopped. I went about fifty or sixty feet after I applied the brakes. I was traveling at that time about thirty or thirty-five miles an hour. On that road, with the brakes I had, and at the rate of speed I was going, I don't think I could have stopped any sooner than I did."

Defendant argues the demurrer should have been sustained because Akers, plaintiff's chief witness, although he testified the car was 100 feet away, yet he failed to testify that the car was 100 feet away from Venters at the time he stepped off the car; that the only direct evidence as to the distance the car was from Venters came from defendant's witness Lanham, which evidence indicated that the car was but twenty-five or thirty feet from Venters when he stepped off the wagon; that, therefore, considering the evidence that the car was travelling at the rate of twenty-five or thirty miles per hour, the driver of the car had less than one second in which to act after the peril arose, which as a matter of law was insufficient time. A number of railroad cases are cited in support of this theory, among them being the leading case of Rollinson v. Railroad, 252 Mo. 525. But the trouble with defendants' contention is that the evidence taken in the light most favorable to plaintiff fails to support their position. We think it is reasonable to assume that when Mr. Akers testified the car was 100 feet away when Venters stepped off the wagon that he meant it was 100 feet from where he was sitting on the wagon; however, if he meant it was 100 feet away from Venters, it would make but little difference. Certainly he did not mean to say the car was 100 feet from the rear of the wagon and he positively states that the car was that distance away at the very time "Venters stepped off the wagon." It therefore follows that we must accept as true that the car was at least 100 feet from Venters at the time he stepped from the wagon and that it was travelling at the rate of twenty-five or thirty miles per hour. It must also be accepted as true that the Ford car could have been actually stopped in approximately fifty feet. In fact Mr. Lanham, the driver of the car, testified he

was going at the rate of thirty or thirty-five miles per hour (five miles per hour faster than the estimate made by Akers) and stopped in, fifty or sixty feet after he applied the brakes. We think a jury would be justified in finding from the evidence that the driver of the car had time to have stopped the car without injury to himself within that one hundred feet; also that Venters was seen by the driver when he stepped from the wagon, and his peril was known to him from about the moment he stepped onto the gravel portion of the highway in the path of the oncoming car; also that the driver of the car had ample space in which to have swerved the car to the right and slowed down its speed sufficiently to have permitted deceased to have escaped had he acted with reasonable promptness and care. In other words we think plaintiff made a case for the jury under the humanitarian doctrine and therefore the demurrer was properly overruled. The following authorities uphold that conclusion: Andrews v. Parker, 259 S. W. 807; Spoeneman v. Uhri, 60 S. W. (2d) 9; Mattocks v. Emerson Drug Co., 33 S. W. (2d) 142; McCarthy v. Sheridan, 83 S. W. (2d) 907.

It is urged that the trial court erred in permitting witnesses for plaintiff to testify that an automobile, different from the one involved in this case, was stopped by them within a certain distance, when there was no evidence as to the rate of speed the car was travelling or that it was similarly equipped for the test. In view of the admission of defendant, Lanham, that he actually stopped the car, travelling at the rate of thirty or thirty-five miles per hour, in fifty or sixty feet, we think no reversible error could be fairly predicated upon this assignment.

During the trial defendants offered to prove by the witness Akers certain statements made by deceased in the doctor's office shortly after the accident to the effect that he saw the car coming and that the accident was his fault because he thought that he could beat it across the road and then, seeing that he could not do so, turned back. This offer was refused by the court as not being a part of the *res gestae*. There was no showing as to the length of time that elapsed between the time of the accident and the time when the alleged statements were made. The fact that the alleged statements were not made at the scene of the accident made it incumbent upon defendants to prove the element of time or such facts as would indicate a clear connection between the main event and the declaration. No offer of proof of that character was made. The ruling of the trial court was therefore correct in holding that the statement was not a part of the *res gestae*. [22 C. J. 465; Jewell v. Excelsior Powder Co., 166 Mo. App. 555, 149 S. W. 1045; Brashear v. R. R. Co., 6 S. W. (2d) 650.]

It is urged, however, that the conversation was admissible as a declaration against interest. No authority applicable to the situation here is cited in support of that theory. Without going into a

consideration of the circumstances under which the alleged declaration against interest was made, it seems to us it could only go to the question of contributory negligence and since the case was submitted solely under the humanitarian doctrine, contributory negligence was no defense. [Dalton v. R. R., 276 Mo. 663, 208 S. W. 828.]

Error is assigned in the giving of Instruction No. 1 for plaintiff. This particular instruction was plaintiff's main instruction submitting the case under the humanitarian theory. The complaint made against the instruction is that it omits the word "thereafter" in referring to what Lanham, the driver of the car, might have done when he saw plaintiff's husband in a position of peril. The instruction does use the words "in time," and "with the means at hand and with safety to the automobile and the occupants thereof, to have avoided striking plaintiff's husband, etc." The case of Murray v. Wire & Iron Company, 238 S. W. l. c. 838, is cited as authority for the proposition that the omission of the word "thereafter" was fatal to the instruction. The authority cited, in discussing plaintiff's failure to make a case, sets out the necessary elements to be proven under the humanitarian doctrine and incidentally states that the burden was upon plaintiff to prove that defendant's chauffeur, saw, or, by the exercise of ordinary care, could have seen plaintiff in a position of peril "in time *thereafter,* by the exercise of ordinary care, etc., to have stopped, etc." (Italics ours.) The opinion was not dealing with an instruction nor does it hold that the leaving out of the word "thereafter" would render an instruction fatally defective or misleading. While of course negligence under the humanitarian doctrine is predicated upon the ability of a defendant to save a person in peril *after* the peril shall have been discovered, or by reasonable care could have been discovered, we think an instruction, otherwise correct, would not be misleading in omitting such word, particularly when the words "in time" are used, as here. No jury could be misled by such an instruction since the words "in time," taken in connection with the other part of the instruction, include within them the idea that it was what defendant might have done *after* the peril was discovered that forms the basis of recovery. It also appears that defendants' own instruction on the humanitarian doctrine did not use the word "thereafter." We are therefore of the opinion that no prejudicial error was committed in giving the instruction. [Borgers v. Ry. Co., 253 S. W. 98.]

Complaint is made of the refusal of the trial court to give defendant's Instruction A. This instruction was to the effect that although the jury might find defendant Lanham was guilty of negligence in driving the automobile in question immediately prior to the collision, yet if the jury further believed Venters saw said automobile approaching "in time to have avoided being struck" then plaintiff cannot recover. It appears to us this instruction goes no further than to submit the question of Venters' contributory negligence, which

was improper under the humanitarian doctrine. Contributory negligence is no defense in such cases. [Dalton v. Missouri K. & T. Ry., 208 S. W. 828, l. c. 831, 276 Mo. 663.]

The instruction does not attempt to submit to the jury the question as to whether or not deceased knowingly placed himself in a position of peril as discussed in the case of Karte v. Brockman Manufacturing Company, 247 S. W. 417, l. c. 423, cited by defendants. There was therefore no error in refusing this instruction.

Error is assigned in the refusal of certain other instructions requested by defendants but since these alleged errors are not briefed they will not be considered.

The only other error assigned is that plaintiff's counsel argued to the jury that defendant's car could have been stopped in thirty feet, when there was no evidence to support such argument. The record shows that defendant's objection to this line of argument was sustained and since nothing further was asked no error could be predicated upon that theory. [Gravemann v. Huncker, 71 S. W. (2d) 59.]

There appears to be no material error committed in the trial of this case and therefore the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.