228 S.W.2d 402 (1950)
HOEFEL
v.
HAMMEL.
No. 27778.
St. Louis Court of Appeals. Missouri.
March 21, 1950.
*403 Robert M. Zeppenfeld, and Herbert E. Barnard, both of St. Louis, for appellant. Walther, Hecker, Walther & Barnard, of St. Louis, of counsel.
A. G. Holtkamp, Evans & Dixon, and John F. Evans, all of St. Louis, Attorneys for Respondent.
BENNICK, Commissioner.
This is an action for damages for personal injuries growing out of an automobile collision which occurred on June 13, 1947, at the intersection of Woodrow Avenue and Lucas and Hunt Road in St. Louis County.
Lucas and Hunt Road is 50 feet in width, and runs generally north and south. It has four traffic lanes, two for northbound and two for southbound traffic. Woodrow Avenue, which runs generally east and west, enters Lucas and Hunt Road from the east, and terminates at the point of intersection.
*404 There is a stop sign on the north side of Woodrow Avenue at the place where it intersects with Lucas and Hunt Road which requires motorists driving westwardly on Woodrow Avenue to come to a stop before entering Lucas and Hunt Road.
The accident happened in the late afternoon at a time when Luas and Hunt Road had considerable traffic upon it. Plaintiff, who lived on Woodrow Avenue, had driven westwardly to the intersection, where he made a stop at the sign preparatory to pulling out into Lucas and Hunt Road and making a left turn to the south. Upon discovering what he considered a safe break in the traffic, he started out into Lucas and Hunt Road, and was in the course of making his turn to the left when defendant, who was northbound on the highway, crashed into the left side of his car.
In his petition plaintiff charged defendant with negligence, among other things, in driving at a high and excessive speed, and in failing to stop, slacken the speed of, or swerve his automobile when he saw or should have seen plaintiff in a position of imminent peril in time to have avoided the collision.
Responding to the petition, defendant filed a counterclaim in which he charged plaintiff with negligence, among other things, in failing to give a warning of his intention to enter the line of moving vehicles; in failing to proceed carefully and yield the right of way to vehicles already in motion on the highway; and in failing to pass beyond the center of the intersection before attempting his turn to the left.
In his petition plaintiff prayed judgment against defendant in the sum of $10,801.26, while defendant, in his counterclaim, prayed judgment against plaintiff in the sum of $11,809.
Upon the trial of the case the jury returned a verdict in favor of defendant on plaintiff's cause of action, and also in favor of defendant on his counterclaim in the sum of $5,000.
In due time plaintiff filed his motion for a new trial both upon his own cause of action and upon defendant's counterclaim. The court thereafter sustained the motion upon two specified grounds, the one, that the verdict was against the weight of the evidence, and the other, that erroneous instructions had been given at defendant's request both on plaintiff's cause of action and on defendant's counterclaim.
Defendant thereupon gave notice of appeal from the order sustaining plaintiff's motion for a new trial, and by subsequent steps has caused the case to be transferred to this court for our review.
The peculiar situation presented on the record challenges our attention as to whether this court in fact has appellate jurisdiction, or whether, on the contrary, the amount in dispute is such as to bring the case within the exclusive appellate jurisdiction of the Supreme Court.
Looking at the case solely from the standpoint that the effect of the order sustaining plaintiff's motion for a new trial was to vacate defendant's verdict for $5,000 on his counterclaim, appellate jurisdiction would undoubtedly be in this court, since the question on appeal would be whether the order sustaining the motion for a new trial should be overruled and the verdict reinstated, in which event the verdict of $5,000 would represent the amount in dispute. Williams v. Atchison, T. & S. F. R. Co., 233 Mo. 666, 136 S.W. 304; State ex rel. Long v. Ellison, 272 Mo. 571, 199 S.W. 984; Culbertson v. Young, 156 Mo. 261, 56 S.W. 893; Deaver v. St. Louis Public Service Co., Mo.App., 199 S.W.2d 83.
But on the face of the record at least there is more to the case than the mere setting aside of defendant's verdict for $5,000 on his counterclaim. By this we have in mind that the apparent effect of the order sustaining the motion for a new trial has also been to restore plaintiff's cause of action to the status of a pending claim for $10,801.26. It is of course the established rule that where the plaintiff sues for a sum within the jurisdiction of the Supreme Court, and there is a defendant's verdict, whereupon the plaintiff files a motion for a new trial, which is sustained, and from which order the defendant appeals, jurisdiction is in the Supreme Court. *405 Powell v. St. Joseph Ry., Light, Heat & Power Co., 336 Mo. 1016, 81 S.W.2d 957; Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 160 S.W.2d 740, 142 A.L.R. 666; Johnston v. Ramming, 340 Mo. 311, 100 S.W.2d 466.
So here we have a situation where, if we view the record solely from the standpoint of the setting aside of defendant's verdict for $5,000 on his counterclaim, appellate jurisdiction is in this court, but where, if we view the order granting the new trial as having had the independent effect of also restoring plaintiff's cause of action to the status of a pending claim for $10,801.26, appellate jurisdiction would on that ground alone be in the Supreme Court. Indeed, if the two causes of action could exist independently so that there could be both a plaintiff's verdict on plaintiff's cause of action and a defendant's verdict on defendant's counterclaim, the amount now in dispute would comprise the amount sued for on plaintiff's cause of action plus the amount recovered by defendant on his counterclaim, and appellate jurisdiction would be all the more clearly in the Supreme Court. Wilson v. Russler, 162 Mo. 565, 63 S.W. 370.
The solution of our problem lies in the fact that owing to the nature of this case a plaintiff's verdict on plaintiff's cause of action and a defendant's verdict on defendant's counterclaim could not exist together. By his cause of action plaintiff sought to impose complete responsibility for the collision upon defendant, while defendant, by his counterclaim, sought to impose complete responsibility for the collision upon plaintiff. In other words, the situation is one where defendant's counterclaim was not only a counterclaim in the sense that it asked for affirmative relief, but also where the facts upon which the counterclaim was based, if established, constituted a complete defense to plaintiff's cause of action. Bramblett v. Harlow, Mo. App., 75 S.W.2d 626, 633. Upon the question of liability for the accident the proof of either cause of action would at the same time disprove the other. In this situation the issues arising both on plaintiff's cause of action and on defendant's counterclaim were merged in and resolved by the verdict in defendant's favor on his counterclaim, and the only real question in dispute on this appeal is whether that verdict shall be reinstated. It follows that since such verdict is for $5,000, appellate jurisdiction is in this court.
Defendant argues that the court was in error in sustaining plaintiff's motion for a new trial upon either of the grounds assigned.
So far as concerns the ground that the verdict was against the weight of the evidence, it is fundamental that a trial court has a wide discretion in such respect, and that an order put upon such ground will not be disturbed by an appellate court so long as there was substantial evidence to support a verdict in favor of the party to whom the new trial is granted. State ex rel. Atchison, T. & S. F. R. Co. v. Ellison, 268 Mo. 225, 186 S.W. 1075; Davis v. Johnson, 332 Mo. 417, 58 S.W.2d 746; Seigel v. Kroger Grocery & Baking Co., Mo.App., 164 S.W.2d 645; Wood v. Walgreen Drug Stores, Mo.App., 125 S.W.2d 534.
According to plaintiff's own testimony, he looked to the south for approaching traffic before pulling out to make his left turn in Lucas and Hunt Road, and saw a number of automobiles coming northwardly towards him. It will be recalled that his own automobile was standing at the stop sign where Woodrow Avenue enters Lucas and Hunt Road.
He remained stopped while some three or four automobiles passed in front of him, and at the same time observed that the next cars in the line of traffic were two automobiles coming abreast in the two northbound lanes of Lucas and Hunt Road, but which were then about a block away, or, by actual measurement, 288 feet south of Woodrow Avenue. Incidentally, the car in the second or inner lane was the one being driven by defendant, who was in the process of overtaking and passing the car in the first or outer lane.
Upon noting such a substantial break in the traffic, plaintiff concluded that he had a favorable opportunity for starting up and crossing over to the far side of Lucas and *406 Hunt Road where he expected to turn left in the outer southbound lane, and he immediately put his automobile in low gear and drove out into the intersection. He was then proceeding straight ahead, and he shifted into second gear about the time he reached the second or inner northbound traffic lane.
Although plaintiff had estimated the speed of the two approaching automobiles at something like 40 miles an hour when he first saw them coming in his direction a block away, he had none the less thought that he would have ample time to clear the intersection before such cars could cover the intervening space. However about the time he reached the center of Lucas and Hunt Road he noticed that defendant's automobile was not only approaching him very rapidly, but was in fact being driven at an angle towards the northwest and across the center line of the highway. Because of an unbroken concrete wall which extends along the west side of Lucas and Hunt Road for a distance of several blocks at the grounds of Glen Echo Country Club, it was impossible for plaintiff to continue directly across the road and get out of danger as he might have done in the case of a normal intersection. Accordingly he started his left turn in the middle of the inner southbound lane, and was on the line dividing the two southbound lanes when the front of defendant's automobile crashed into the left side of his car, the whole collision occurring in the west or south-bound portion of the highway.
Corroborating testimony was given by one Ralph Bertke, an eleven-year-old boy, who lived on the east side of Lucas and Hunt Road between Woodrow Avenue and the street to the south. Ralph saw the whole occurrence from a point where he was standing about 40 feet from the corner. He noticed plaintiff make the boulevard stop and then start to pull out into Lucas and Hunt Road after he had waited for several cars to go by. Perhaps the most important feature of Ralph's testimony was the support he gave to plaintiff's contention that at the time plaintiff started up from the boulevard stop, defendant's car and the one with which it was running abreast were then down by the root beer stand at the corner of the street a block away.
As a matter of fact, there was no dispute in many particulars between plaintiff's version of the facts and the testimony given by defendant himself. As defendant was passing the root beer stand, he admittedly saw plaintiff's automobile standing at the boulevard stop on Woodrow Avenue. The only real controversy was over the question of the relative positions of the two vehicles when plaintiff started pulling out into Lucas and Hunt Road. Defendant claimed that his own car was then only 30 to 50 feet from Woodrow Avenue, and that even though he saw plaintiff starting up, he did not expect him to come all the way out into the line of moving traffic. Consequently he did not apply his brakes or do anything other than veer to his left in order to avoid plaintiff's car. His further explanation was that plaintiff then "stepped on the gas", with the consequence that his own automobile was caused to crash into the side of plaintiff's car at an unabated speed of 30 miles an hour at which he estimated that he had been traveling. Defendant reiterated that he did not apply his brakes at any time before the accident, and even thought that he could probably have brought his car to a complete stop in a space of 50 feet if he had made an attempt to do so.
Where a new trial is granted the plaintiff on the ground that a defendant's verdict was against the weight of the evidence, the test for the appellate court to apply in determining whether there was substantial evidence to support a plaintiff's verdict is the same as would be applied in determining whether there was substantial evidence to take the plaintiff's case to the jury as against the defendant's motion for a directed verdict. Wood v. Walgreen Drug Stores, supra.
Accepting plaintiff's evidence as true, and according him the benefit of such favorable testimony on defendant's part as was consistent with his own theory of the case, we see no room for any doubt about the fact that he had a submissible case for the jury.
*407 This view of the case of course assumes the proposition that defendant's car was a full block away when plaintiff started out into Lucas and Hunt Road. From the very moment that plaintiff started up with the obvious intention of driving out where he would come into the actual path of defendant's automobile, the latter was charged with the duty of taking such available precautions in the operation of his own automobile as would avoid a collision. Under the circumstances of this case it did not affect defendant's obligation whether his subsequent conduct was to be considered in the light of primary negligence or negligence under the humanitarian doctrine. After starting up plaintiff proceeded forward until he was completely on the far side of the highway before the collision occurred. Defendant had meanwhile driven the full city block at unabated speed. A very slight slackening of defendant's speed would have enabled plaintiff to cross the road in absolute safety, and indeed defendant would have had ample time to have brought his car to a complete stop if the situation had so required. As a matter of fact, there would have been no collision if defendant had merely stayed in his own traffic lane. Instead he cut over on his wrong side of the road and crashed into plaintiff's car on the southbound portion of the highway. There was proof to support a verdict if one should be returned in plaintiff's favor; and the court did not abuse its discretion in setting aside defendant's verdict upon the ground that it was against the weight of the evidence.
Since the court's action is to be sustained upon the ground of the weight of the evidence, it becomes immaterial whether it might also be sustained upon the ground of error in the instructions given at defendant's request. If any of such instructions were in fact erroneous, the error may be corrected upon the retrial of the case.
The Commissioner accordingly recommends that the order sustaining plaintiff's motion for a new trial be affirmed and the cause remanded.
PER CURIAM.
The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.
The order sustaining plaintiff's motion for a new trial is, accordingly, affirmed and the cause remanded.
ANDERSON, P. J., and HUGHES and McCULLEN, JJ., concur.