Stella ENDERMUEHLE, Plaintiff-Appellant,

v.

Olivia SMITH, Defendant-Respondent.

No. 49323.

Supreme Court of Missouri,

En Banc.

Nov. 11, 1963.

Dissenting Opinion Nov. 26, 1963.

Hough, Hormberg, Butler & Abels, F. Daley Abels, Clayton, for appellant.

Fred B. Whalen, Warren Grauel, Whalen, O'Connor, Grauel & Sarkisian, St. Louis, for respondent.

PAUL VAN OSDOL, Special Commissioner.

In this case, plaintiff Stella Endermuehle had instituted her action by petition in which she stated a claim for her personal injuries alleged to have been sustained in a motor-vehicular collision at and in the intersection of Reed Avenue, a north-south street, and Hoffmeister Avenue, an east-west street, in St. Louis County.

In the collision the southbound Nash automobile driven by plaintiff and the east-bound Ford automobile driven by defendant Olivia Smith collided at some point in and near the center of the intersection.

Plaintiff sought the relief of a judgment for damages in her favor and against defendant in the sum of $22,550. And, by answer and counterclaim, defendant in whole general effect denied her responsibility for the casualty, and stated a claim on which defendant sought the relief of a judgment in her favor and against plaintiff in the amount of $100 for property damage.

Plaintiff had alleged, and the trial court submitted, defendant's negligence under the humanitarian rule; and defendant had alleged, and the trial court submitted, plaintiff's negligence specifically in failing to look out laterally and in failing to yield the right of way to defendant.

At the conclusion of the evidence introduced in the trial of the cause, by instruc-tions tendered by the parties, the trial court submitted the factual issues that had arisen under the pleading, and under the evidence the adversary parties had introduced tending to support and prove and tending to undermine and disprove their respective adverse claims; and the jury, having heard, considered, weighed and assessed the value of the conflicting evidence, returned a verdict resolving the factual issues in favor of defendant and against plaintiff, that is, the jury specifically by the verdict found "for defendant on plaintiff's cause of action" and further found "in favor of defendant and against plaintiff on defendant's counterclaim," and assessed defendant's damages in the sum of $100.

The trial court overruled plaintiff's motion for a new trial; and plaintiff gave notice of her appeal "from the judgment for Defendant on Plaintiff's cause of action and judgment for Defendant on Defendant's counterclaim * * *."

At the time of the casualty there were no traffic control lights or signals or signs at or near the Hoffmeister-Reed right-angle street intersection. The elevation of Hoffmeister is upgrade to the westward of Reed. The "top of the hill" on Hoffmeister is approximately two hundred feet west of Reed. Reed Avenue "is level."

Plaintiff had testified that at about five forty on a February afternoon she was driving her Nash automobile southwardly on Reed Avenue. It was a clear day and the streets were dry. In approaching Hoffmeister Avenue, plaintiff had been moving at a speed of ten to fifteen miles per hour with the left side of the Nash two or three feet west of the center of Reed. When she had approached to a point "I would say" fifteen feet north of the intersection, plaintiff had "slowed up" to four or five miles per hour and she then and there looked to her right, westwardly, and there wasn't any eastbound traffic on Hoffmeister. At that point, plaintiff could see sixty or seventy feet westwardly "up Hoffmeister." She then looked to her left, eastwardly, and

there wasn't anything coming from that direction. Her Nash was then almost to the intersection. She then looked straight ahead, southwardly, and accelerated speed. When the front end of the Nash was in the center of the intersection the Nash was moving between ten and fifteen miles per hour. At this point, plaintiff looked to her right and saw defendant's eastbound Ford about twenty-five feet "away from me." Plaintiff tried to swerve to her left and possibly accelerated the speed of her car. When the vehicles collided, half of the Nash was south of the center of Hoffmeister. The front end of defendant's Ford struck the Nash "about center broadside." After the collision defendant said to plaintiff, "I'm sorry * * * but I didn't see you in time to stop."

In testifying, defendant said she was driving her Ford eastwardly down Hoffmeister in approaching Reed Avenue with the left side of the Ford one and a half or two feet to her right of the center of Hoffmeister, and at the speed of probably twenty-five miles per hour. As she "came down the hill" she had slackened speed and was moving about twenty miles per hour when she was forty feet west of Reed. She had started to slacken up when she was fifty or sixty feet west of Reed and was applying braking pressure until the vehicles collided. When defendant was about twenty feet from the intersection, she looked to her left and could see no southbound traffic on Reed Avenue. She saw plaintiff's Nash a few seconds before the collision. When she first saw the Nash it was just entering the intersection, and defendant's Ford was over (east of) the west curb line of Reed. At that time, the Ford was moving at a speed of approximately twenty miles per hour, and the Nash was moving at the same speed, if not faster. Defendant swerved to the right a little bit. The point of impact was about one foot east of the "middle line" of Reed and at the time and place of impact defendant's Ford was practically stopped. The left front of the Ford hit the Nash.

Neither of the parties, plaintiff-appellant and defendant-respondent, questions the sufficiency of the evidence in supporting the submissions of the adversary claims, and the above abbreviated testimony of plaintiff and defendant is sufficient in illustrating the irreconcilability of their adverse and conflicting factual theories. And, since both and each of the parties made out her case, it was the jury's province and function to resolve the conflicting factual issues in favor of one and against the other and this the jury did—in favor of defendant and against plaintiff, as we have stated. Now, since the trial court did not award a new trial, the judgment ensuing the verdict, *but for this appeal,* was final.

Herein upon appeal, plaintiff-appellant contends error of the trial court in giving defendant's Instruction Nos. 2 and 5.

But, before we examine and decide the contentions made herein upon appeal, it is our duty to ascertain that this court has appellate jurisdiction of the cause.

The "monetary" effect of the judgment appealed from was to deny plaintiff, appellant herein, the relief she had sought, that is, a judgment in money amount $22,550 in her favor and against defendant *and* to grant defendant, respondent herein, the relief she had sought, that is, a judgment in money amount $100 in her favor and against plaintiff. Although in this case and in other cases of like nature, only one or the other, a plaintiff or a defendant, can ever recover (Hoefel v. Hammel, Mo.App., 228 S.W.2d 402; Jameson v. Fox, 364 Mo. 237, 260 S.W.2d 507; Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920; Hamilton Fire Ins. Co. v. Cervantes, Mo. App., 278 S.W.2d 20; Smith v. Rodick, Mo. App., 286 S.W.2d 73; Stonefield v. Flynn, Mo.App., 347 S.W.2d 472), nevertheless, in this case it is seen that, actually, the money amounts of the appellate-jurisdictional decisive "deny *and* grant" monetary impact upon appellant of the appealed-from

judgment in defendant-respondent's favor and against plaintiff-appellant are in aggregate amount $22,650. The Supreme Court of Missouri has exclusive appellate jurisdiction of the cause on the ground of the amount in dispute. Const., Art. V, §§ 3 and 13, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S.

At defendant's request the trial court gave Instruction No. 2, advising the jury concerning the standard of the highest degree of care as required of persons operating motor vehicles on the public highways of Missouri, as follows:

"The Court instructs the jury that under the law every person operating a motor vehicle on the public highways in the State of Missouri shall exercise the highest degree of care, that is to say, with the degree of care which a very careful and prudent person would exercise under the same or similar circumstances, and the Court further instructs the jury that the failure to exercise such care constitutes negligence on the part of any person so operating an automobile."

And at defendant's request the trial court gave the verdict-directing Instruction No. 5, submitting specific primary negligence of plaintiff in failing to yield the right of way, as follows:

"The Court instructs the jury that if you find and believe from the evidence that defendant was operating an automobile eastwardly on Hoffmeister Avenue in the exercise of the highest degree of care and that plaintiff was operating an automobile southwardly on Reed Avenue and was to the left of defendant, and if you find that both vehicles entered the intersection at approximately the same time and thereafter collided;

"And if you further find and believe, that when plaintiff was approaching said intersection plaintiff saw or in the exercise of the highest degree of care

could have seen defendant approaching said intersection and knew or should have known that said vehicles would reach the intersection at about the same time, then the Court instructs you that it was the duty of plaintiff to yield the right of way to defendant;

"The Court further instructs you, that if you find and believe that plaintiff in the exercise of the highest degree of care could have yielded the right of way to defendant but failed to do so, then the Court instructs you that plaintiff was negligent in operating her automobile;

"And if you find and believe, that the negligence, if any, of plaintiff directly caused the collision and the automobile operated by defendant to be damaged, then your verdict must be for defendant on her counterclaim against plaintiff, unless you find for plaintiff under Instruction No. 3."

This case illustrates the hazard of prejudicial error in giving an instruction such as Instruction No. 2, abstractly advising the jury of and defining the standard of the highest degree of care of *every* person and the failure of the exercise of which highest degree of care as constituting "negligence" on the part of *any* person; this, without qualification by any reference whatsoever to the particular conduct, act or omission, the trial court by verdict-directing instructions is submitting as constituting some particular kind of negligence—specific primary negligence, humanitarian-rule negligence, contributory negligence.

■■ Under the humanitarian-rule submission, the jury was concerned with defendant's duty, but only when and after the humanitarian rule seized upon the factual situation; and the jury was not at all concerned with plaintiff's duty, because the plaintiff's failure to exercise the highest degree of care in operating her motor vehicle would not defeat plaintiff's recovery under plaintiff's humanitarian-rule submis ·

sion. Hall v. Clark, Mo., 298 S.W.2d 344. We have said that under the humanitarian rule the cause of the injured person's peril is immaterial (save, perhaps, when he voluntarily seeks injury). Grubbs v. Kansas City Public Service Co., 329 Mo. 390, 45 S.W.2d 71; Largo v. Bonadonna, Mo., 269 S.W.2d 879. The humanitarian rule exempts plaintiff from his own contributory negligence and correspondingly exempts defendant from liability for his primary or antecedent negligence. Largo v. Bonadonna, supra, and cases therein cited.

■ Repeatedly it has been said that instructions stating abstract principles of law should not be given. Such instructions tend to confuse and mislead the jury. No one could know how the jury would apply said abstract principles of law to the case at hand. Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 125 A.L.R. 674; Hall v. Clark, supra.

■ Instruction No. 2 was improper and should not have been given; but we shall look at the other instruction given in this case to see if, in our opinion, the giving of the instruction (No. 2) in the whole of the instructions given, was prejudicially erroneous in this case.

■ Defendant contends that the standard of care, the failure to exercise which care constitutes negligence, as was the jury advised in Instruction No. 2, was pertinent to plaintiff's primary conduct submitted in defendant's Instructions Nos. 5 and 6 as specific primary negligence of plaintiff; and that the instructions given, considered as a whole, made clear to the jury that Instruction No. 2 was applicable only to the primary conduct of plaintiff in those instructions submitted as specific primary negligence of plaintiff.

The trial court in plaintiff's behalf had given the verdict-directing Instruction No. 3 submitting to the jury defendant's negligence under the humanitarian rule and by which, in its concluding clauses, the jury was told in effect that, if the jury found the humanitarian-rule facts as hypothesized in the instruction, "your verdict shall be in favor of the plaintiff and against the defendant and this is true *even though you believe and find from the evidence that plaintiff herself was guilty of negligence in getting into the aforesaid position of imminent peril* * * *."* (Our emphasis.)

As noticed, the above-quoted verdict-directing Instruction No. 5, given in behalf of defendant, and submitting specific primary negligence of plaintiff, concludes with the clause *"unless you find for plaintiff under Instruction No. 3."* (Our emphasis.) Also does Instruction No. 6, given in defendant's behalf in submitting plaintiff's primary negligence, specifically in failing to look out laterally, conclude with the same clause as does Instruction 5.

It is not contended by plaintiff that Instruction No. 6 is in any respect erroneous. But plaintiff does contend that Instruction No. 5 is erroneous and prejudicially so, especially when read and considered together with Instruction No. 2, and to this contention we agree.

We have scrutinized the hypotheses in the first three paragraphs of the instruction (No. 5) and have noted that these three paragraphs hypothesize specific primary negligence of plaintiff; that the three paragraphs are not actually complete severally each in itself; and that the third and fourth paragraphs are linked by the conjunction "and." Nevertheless, we have the opinion the "negligence" spoken of in the fourth paragraph is not, in the fourth paragraph, linked by clear reference to the "specific primary negligence" hypothesized in the preceding three paragraphs of the instruction.

The case of Venters v. Bunnell, 230 Mo. App. 1190, 93 S.W.2d 70, cited by defendant, is not helpful here.

It may be that the drafter of the instruction (No. 5) inadvertently left out some such word as "aforesaid" as qualifying the

word "negligence" spoken of in the fourth paragraph. But, regardless of how the omission came about, the fact is that such a word isn't there. And the omission of some such word as "aforesaid" in qualifying the word "negligence" in the fourth paragraph brings into play and perverts the intended incidence and effect of the expression "if any" immediately after the word "negligence" in the fourth paragraph.

We know the purpose of the expression "if any," interposed in an instruction, is usually to make clear to a jury that some hypothesized fact preceding the expression "if any" is to be understood by the jury as submitted to the jury and not by the trial court assumed to be true; and no doubt this was the purpose of the drafter of Instruction No. 5. But the "negligence" spoken of in the fourth paragraph not clearly referring to the specific primary negligence hypothesized in the first three paragraphs, the expression "if any" in its setting in "negligence, if any, of plaintiff" readily could be interpreted by a juror, a layman of average intelligence, as meaning "*any* negligence of plaintiff."

Of course the jury had read Instruction No. 2, which as stated speaks of the standard of the highest degree of care, the failure to exercise which highest degree of care constitutes negligence on the part of any person, and without any reference in the instruction to any kind of conduct specifically submitted as in the failure of the exercise of the highest degree of care and constituting causal negligence in the situation and in the circumstances of the case. In our opinion, the fault or error in Instruction No. 5 opened a wide vista for the jury's view right through the sometimes-called "tail-end" clauses of Instructions 3, 5 and 6 and for another look at Instruction No. 2.

So it is, or so it seems to us, the jury's view readily could have been confused and distorted into believing that they, the jurors, were to consider *any* kind of conduct, act or omission, of plaintiff—antecedent or primary or contributory, and whether or

not specifically submitted, that they, the jurors, thought was in the failure to exercise the highest degree of care and which they, the jurors, thought should be decisive on the factual issues of causal negligence.

Plaintiff has made a contention of other error in giving Instruction No. 5. We shall not unnecessarily extend the length of this opinion by addressing ourselves to the contention. The contention may be considered by counsel, and the error, if so may be avoided upon a retrial.

The judgment should be reversed and the cause should be remanded.

It is so ordered.

Adopted as the opinion of the court en Banc.

STORCKMAN, DALTON, HOLLINGSWORTH, HYDE, and HOLMAN, JJ., concur.

EAGER, C. J., concurs in result.

Leedy, J., dissents in separate dissenting opinion to be filed.

LEEDY, Judge (dissenting).

I do not agree that this court has (or should have) jurisdiction over this appeal, and I therefore dissent from the holding of the principal opinion on that question. In my view, the "amount in dispute," for appellate monetary jurisdictional purposes, is presently, and can only be, the sum awarded respondent (defendant) on her counterclaim, to wit, $100.

The principal opinion concedes that in a case of this nature there can be no such thing as simultaneous recoveries by both parties, but only by one or the other (because proof of one claim necessarily disproves the other), and the seven cases the opinion cites in support of that proposition so hold. And, by the same token, it is apparent that on this appeal there cannot be a reversal as to plaintiff's cause of action and simultaneously an affirmance as to de-

fendant's counterclaim, or vice versa. But the cited cases just referred to go further and declare the principle on which appellate jurisdiction in such cases (when dependent on the "amount in dispute") is to be determined, i. e., it is fixed by the amount awarded the prevailing party, and not the aggregate of that sum and the amount prayed in the other action or counterclaim. This is the principal aspect of the cited cases, but even so the principal opinion does not mention the latter holding. Thus there is no *express* overruling of the cited cases, nor is it pointed out wherein they are in any respect erroneous. It says only this: "[N]evertheless, *in this case* it is seen that, actually, the money amounts of the appellate-jurisdictional decisive 'deny *and* grant' monetary impact upon appellant of the appealed-from judgment in defendant-respondent's favor and against plaintiff-appellant are in aggregate amount $22,650. The Supreme Court of Missouri has exclusive appellate jurisdiction of the cause on the ground of the amount in dispute. Const. Art. V, §§ 3 and 13, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S." To say that " * * *in this case* it is seen," etc., (both italicizations the present writer's), and considering the context in which the italicized words appear, makes such language susceptible to an interpretation that it was used by way of differentiating the case at bar from the others.

The facts on which the counterclaim was based, if believed by the jury (as they were), constituted a complete defense to plaintiff's cause of action, and in this situation the issues arising both on plaintiff's cause of action and on defendant's counterclaim were merged in and resolved by the verdict in defendant's favor on the counterclaim. The question on this appeal, then, is whether or not the $100 judgment entered on that verdict should be reversed because of allegedly erroneous instructions given on behalf of the defendant, and to the prejudice of plaintiff. Under the merger-of-issues doctrine here applicable, before plaintiff in this case would be entitled

to any relief in this court, she must first show error was committed in the obtention of that judgment. Unless defendant's judgment is warrantably reversed, plaintiff's cause of action need not be considered *as such* because any error going to it inheres in the judgment on the counterclaim and is reviewable on consideration of the latter. If, as here contended, the $100 judgment was obtained because of erroneous instructions, such error is reviewable on appeal by that appellate court whose jurisdiction embraces such a sum—ours does not. If this is not to continue to be the rule, then the cases to the contrary should be explicitly overruled, and the matter finally set at rest, and not left in doubt or uncertainty. For my own part, I believe the cited cases declare a fair and sensible rule for the solution of the problem of monetary jurisdiction in cases of this kind. Our dockets are crowded enough with cases where the amounts in dispute are genuinely in excess of $15,000, and should not be burdened with cases wherein the jurisdictional amounts are illusory.