**Ruth ERNY, Respondent,**

**v.**

**REVLON, INCORPORATED, Appellant.**

**No. 54137.**

Supreme Court of Missouri, Division No. 1.

Oct. 12, 1970.

Milton Suffian, Marvin Q. Silver, St. Louis, for respondent.

Robertson, DeVoto, Wieland & Lange, L. A. Robertson, Morton K. Lange, St. Louis, for appellant.

FRED L. HOWARD, Special Judge.

This is a products liability case in which respondent received a verdict and judgment in the amount of $40,000.00 against appellant Revlon. A motion for directed verdict was sustained at the close of all of the evidence in favor of the other original defendant, May Department Stores. No appeal has been taken from such directed verdict and we shall refer to Revlon as if it had been the only defendant in the case. We shall refer to the parties as they appeared below.

In October of 1960, plaintiff purchased a tube of "Color-Up", a hair coloring product, manufactured by defendant Revlon, from Famous-Barr Company in St. Louis, Missouri. The tube she purchased was in the shade of "Warm Brown". She read the directions several times and a few days later, on a Saturday, she applied a "patch test" pursuant to the directions that came with the product. In doing so, she washed the skin in the fold of her left elbow; dried it and squeezed out a small amount of the "Color-Up" on the skin. She left it on her skin, uncovered, for 24 hours or more. No redness or irritation

or rash developed. The next day, Sunday (about 24 hours after applying the patch test), she shampooed her hair, dried it, and put on the "Color-Up". She used only about one-fourth of the tube (the directions called for one-half of the tube at one time), shampooed it until it foamed and let it stand for three minutes. She then rinsed the "Color-Up" out of her hair and dried it again. She put her hair up in pin curls and let it dry. About an hour and a half after this application, her neck started to itch. Her neck became red and the situation worsened for several days. She went back to Famous-Barr to complain but received no help. The redness and itching got progressively worse; her face and head were painful and swollen out of proportion; her eyes and nose closed and she could not sleep. She developed blisters with foul smelling liquid oozing from them; lost her sense of taste; was unable to eat and unable to sleep. She was in extreme pain.

On November 2nd, she went to Dr. Briscoe who diagnosed her condition as an allergic reaction to the "Color-Up". The doctor treated her with cortisone and other medications. Plaintiff went to Dr. Briscoe every day for about ten days and then every other day until the end of November, and then once a week or more often.

On her first visit to Dr. Briscoe, he examined her chest and heart and found nothing remarkable. However, in a matter of a week or two, she developed a heart murmur. About November 6, 1960, she shampooed her hair again (with a product she had used before without adverse reactions—she did not apply "Color-Up"), and the same reaction occurred again, the blisters flared up along with the swelling and pain. She shampooed her hair again about the middle of November and on December 10th, and each time the same reactions took place. Finally, just before Christmas, at the direction of the doctor, when she shampooed her hair she got under the shower and stayed until she was waterlogged to get the last of the "Color-Up" out of her hair and system, and the swelling gradually declined. Thereafter, she would have a flare-up but nothing as severe as the previous reactions.

Dr. Briscoe had lost his records as to the treatment of plaintiff and his testimony was not precise as to specific dates and medications. However, he testified that the heart condition he found, as indicated by the murmur, etc., was "a toxic myocarditis". Plaintiff developed a swelling in the extremities with associated loss of appetite and loss of strength. The heart insufficiency caused an accumulation of fluid. Dr. Briscoe testified that these conditions were the result of a toxic reaction to the "Color-Up".

Plaintiff continued to work, with the exception of Thanksgiving and Christmas holidays, until January 17, 1961, when she collapsed and was hospitalized. After being in the hospital for about a week and at home thereafter, she returned to work on April 24, 1961, and worked until the close of the school year, about June 15, 1961. She was employed by the St. Louis Board of Education as a welfare caseworker, and her duties required her to visit pupils' homes and this necessitated much walking and climbing as many as three or four flights of stairs for each visit. Plaintiff returned to work in September, 1961, when school reopened, and worked until October 9, 1961, when she developed an arterio thrombosis in her leg. She never returned to work after that but took an early retirement because she was unable to continue the physical exertion necessary to her duties. As a consequence of the arterio thrombosis, her leg was in an ice pack for three weeks and she was then on crutches. On Thanksgiving of 1961, a cartilage in her leg broke and she had to use ice packs again and was on crutches for about two years. At the time of trial, her dermatitis had disappeared; her hair, which started to fall out in April 1961 (she lost all of her hair), had grown back in but only sparsely on the top of her head.

Her main complaint at trial was weakness and inability to get around.

It was stipulated that Revlon's product "Color-Up" contained, among other dyeing agents, paraphenylendiamine dye (hereinafter referred to as PPH for convenience). The evidence was that PPH is dangerous to a certain small percentage of people using the product containing it. This percentage is about one person in 50,000. The evidence was that this PPH had caused the adverse reaction in the plaintiff.

A Dr. Weiss (who was dead at time of trial) examined plaintiff on behalf of Revlon and he reported that she "had an allergic contact dermatitis with neurological phenomena"; "a combination of peripheral phenomena plus associated mental disturbances". His diagnosis was "allergic contact dermatitis with disturbances of the nervous system". Plaintiff's doctor testified that her difficulties began as a result of the use of "Color-Up" and as to the heart condition, he stated "I think the toxic material was liberated and related reaction damaged the heart muscles".

On this appeal, we consider the evidence in the light most favorable to the plaintiff who secured the verdict of the jury. The above statement of facts is cast in that light. Plaintiff submitted her cause of action against Revlon on the theory that PPH could cause allergic and systemic damage to some people who used it and was thereby dangerous; that the defendant Revlon knew or by using ordinary care could have known of this danger; that plaintiff did not know of the danger; that Revlon failed to give adequate warning of the danger and was thereby negligent; and that plaintiff was damaged by the dangerous ingredient (PPH). In this connection, the instructions given on the printed material enclosed with the "Color-Up", stated:

"As you know, some people are allergic to various things, peanuts, chocolate, golden rod, fish. Of the million of users of hair color, a few are allergic. The method used to determine such an allergy or hypersensitivity in advance is the preliminary skin or patch test which should be made before every application.

"With soap and water wash an area about the size of a quarter in the inner-fold of the elbow. Dry by patting with absorbent cotton or towel. With cotton apply to the area a little color-up of the shade you intend to use. Let dry and leave uncovered for 24 hours. If any reddening or irritation develops do not use Color-Up, * * *"

■ Appellant's "Points Relied On" contain allegations not mentioned in the motion for new trial interspersed with allegations that are properly preserved for our consideration by such motion. We shall not attempt to minutely differentiate between the wheat and the chaff but shall content ourselves with the consideration of those contentions which are properly preserved for review. Defendant's first allegation of error is that the trial court erred in failing to direct a verdict for Revlon because an adequate warning was given and plaintiff did not heed the warning and did not follow the instructions. The argument in support of this is to the effect that plaintiff did not properly apply the patch test. This argument is based primarily on statements made by plaintiff in a deposition taken by defendant and used to impeach her at the trial. Her testimony at the trial showed a substantial compliance with the directions for the patch test. The jury was justified in believing such testimony even though it was shown that in her deposition she stated that she washed the "Color-Up" off her arm immediately after applying it rather than letting it remain for the 24-hour period as directed. The testimony at the trial was that she left the "Color-Up" on her arm for 24 hours or longer and that no reaction occurred. The evidence was that certain people might not react to the patch test but might react to the application of the "Color-Up" on the hair, and

as is readily apparent from the reading of the instructions above, no warning of this danger was given. We, therefore, rule this contention against appellant.

Appellant Revlon next complains that the court erred in giving Instruction No. 2 on various grounds. This instruction reads as follows:

"Your verdict must be for the plaintiff and against the defendant, Revlon, Inc., if you believe:—

"First, Defendant, Revlon, Inc., manufactured for sale to the public a hair-coloring product, and

"Second, The hair-coloring product contained an ingredient known as paraphenylenediamine dye which could cause allergic and systemic damage and was thereby dangerous to some of the persons using it in the manner and for the purpose intended, and

"Third, Defendant, Revlon, Inc., knew or by using ordinary care could have known of this danger to some of the persons using its hair-coloring product, and

"Fourth, Plaintiff did not know and by using ordinary care could not have known of the danger, and

"Fifth, Defendant failed to give an adequate warning to plaintiff of the danger in the use of its product, and

"Sixth, Defendant was thereby negligent, and

"Seventh, While the hair-coloring product was being used by plaintiff in the manner and for the purpose for which it was intended, plaintiff was damaged as a direct result of such dangerous ingredient, unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 4."

Appellant first complains that there was no competent or substantial evidence that defendant's product could cause allergic or systemic damage. The evidence as we have heretofore summarized it refutes this contention and we need not consider it further.

Appellant next contends that this instruction gave the jury a roving commission because the instruction "failed to link by clear reference the alleged danger referred to in paragraph Second with the alleged danger referred to in paragraph Fourth and in paragraph Fifth". In this connection appellant also complains that the instruction deviated from M.A.I. 26.01.

The given instruction was modeled after M.A.I. 26.01 (in effect at the time of trial and prior to the revision effective September 1, 1969). The complaint is that M.A.I. 26.01 in paragraph Fifth refers to "such" dangerous condition; whereas, Instruction No. 2, as given, refers to "the" dangerous condition. M.A.I. 26.01, as drafted, is applicable to a defective device. It is apparent that M.A.I. 26.01 could not have been given as drafted, in the case at bar. Consequently, there was no M.A.I. instruction applicable to the case at bar and it was necessary for plaintiff to draft an instruction to fit the facts in the case. The cases cited and relied on by appellant have to do with instructions which permit a verdict for plaintiff if the jury finds *any* negligence on the part of defendant and such negligence is not limited to the items submitted in the instruction. See, for instance, Endermuehle v. Smith, Mo., 372 S. W.2d 464, and cases following the doctrine therein enunciated. The principles of these cases have no applicability to the case at bar. Instruction No. 2 required the jury to find that the "Color-Up" contained PPH which was dangerous; that defendant was negligent in failing to give an adequate warning; and that because of such negligence, plaintiff was injured by the PPH. Thus, the jury was not given a roving commission to find negligence on the part of defendant in any manner which they could imagine but was limited specifically to finding injury from the PPH before they could return a verdict for plaintiff.

This was not a case wherein a defective condition was the basis of plaintiff's case. Here, the product was supposed to contain PPH. It did contain PPH and the jury was required to find injury caused by PPH before they could return a verdict in favor of plaintiff. Thus, plaintiff could not use M.A.I. 26.01 as promulgated but was required to draft her own instruction. This was done and Instruction No. 2 was modeled on M.A.I. 26.01 and conformed to requirements of the rules. The language in Slagle v. Singer, Mo., 419 S.W.2d 9, l.c. 13, is particularly applicable in this instance. It was there said:

"It is thus seen that MAI 26.01 is not, under the facts of this case, an applicable instruction which, under Rule 70.-01(b), must be given to the exclusion of any other on the same subject, so that we need not consider the effect of using the words 'allowed and permitted' instead of 'furnished' as if we were dealing with an MAI instruction which must be given to the exclusion of any other. MAI 26.01, as its language connotes and as the Committee's comment indicates, Missouri Approved Jury Instructions, pp. 214–215, relates to suppliers of chattels for a business purpose. The Committee points out that the pattern instruction 'covers only one area and will merely serve as a guide where the substantive law requires that other issues be submitted'. Rule 70.01(e) provides for modifications of MAI where necessary to submit the issues fairly in a particular case or where there is no applicable MAI. Here there was no applicable MAI and so this is not an example of an unnecessary deviation from a required instruction. Defendant Singer submitted a modification of MAI 26.01 which meets the requirements of being simple, brief, impartial, free from argument and not submitting detailed evidentiary facts. We do not believe instruction No. 5 is susceptible to the particular attacks plaintiff makes against it and therefore overrule plaintiff's contentions and affirm the judgment."

See, in this connection, the discussion of the issues as to instructions in Braun v. Roux Distributing Company, Inc., Mo., 312 S.W.2d 758, and Krug v. Sterling Drug, Inc., Mo., 416 S.W.2d 143.

▬ Appellant next complains that Instruction No. 2 required a finding only that the PPH could cause allergic and systemic damage without requiring a finding that it could cause "damage in some persons, as distinguished from animals * * *" This contention is without substance. In the first place, the instruction required the jury to find that PPH was "dangerous to some of the persons using it." In the second place, the instruction required a finding of damage to the plaintiff who is a person and not an animal.

Appellant next complains that the instruction is erroneous because it authorizes a plaintiff's verdict on a finding that the PPH "could cause allergic and systemic damage of any kind" without requiring that it did, in fact, cause the injuries suffered by plaintiff. This contention ignores the plain wording of the instruction which specifically required the jury to find that the PPH did, in fact, cause the injuries complained of by plaintiff.

▬ Lastly, appellant complains that the instruction is erroneous because it did not require a finding that the "Color-Up" contained a dangerous ingredient when manufactured as contrasted to its contents when purchased and used by plaintiff. This is a false issue. It was stipulated by the parties that "Color-Up" was supposed to and did contain PPH when manufactured by Revlon and plaintiff's case was based upon a required finding that her injuries resulted from the PPH. There was no contention that the product was defective or that its nature had been changed after it was placed in the channels of trade by Revlon and before it reached plaintiff. Appellant's argument in support of this contention is based on the testimony of one witness that plaintiff's injuries were either the result of the PPH or the result of

something happening to the product after it left Revlon. This possible alternative, thrown out in an offhand manner by a witness, did not change the nature of plaintiff's cause of action. We, therefore, conclude that plaintiff's verdict directing Instruction No. 2 was not prejudicially erroneous.

■ Appellant next complains of the giving of Instruction No. 7 which was plaintiff's measure of damage instruction. The quick answer to this contention is that Instruction No. 7 was not mentioned in the motion for new trial, and that this allegation of error is not preserved for our review.

Appellant next contends that the court erred in permitting improper argument by plaintiff's counsel and in refusing to declare a mistrial because of such argument. Without setting out the argument verbatim, it is sufficient to say that appellant complains about argument concerning a "fake and phony defense" and "medicine show". In the first place, this was undoubtedly intended to be retaliatory to the argument made by appellant's attorney that certain argument of plaintiff's counsel "is the biggest fraud and mistake that he has ever made."

Appellant also complains of the statement by plaintiff's attorney that this was plaintiff's day in court and this was the only time that plaintiff had the right to be heard in court.

■ We have carefully examined these two arguments in context and conclude that the trial court did not abuse its discretion in its rulings. As to the argument concerning fraud and a medicine show, the court sustained the objection but refused to discharge the jury. As to the argument concerning this being plaintiff's only day in court, the court overruled the objection. The latter argument is similar to that held to be permissible in Young v. Missouri Public Service Co., Mo., 374 S.W.2d 59.

In any event, the trial court, who heard the argument and could evaluate all of the intangible circumstances surrounding the argument which cannot be preserved in a cold transcript, has a wide discretion in regulating such matters. Appellant has not demonstrated that this discretion was abused and, therefore, no reversible error appears. See Bine v. Sterling Drug, Inc., Mo., 422 S.W.2d 623; Handshy v. Nolte Petroleum Co., Mo., 421 S.W.2d 198; Vitt v. Baer, Mo.App., 335 S.W.2d 681; and Bracken v. Kock, Mo.App., 404 S.W.2d 201.

■ Lastly, appellant complains that the verdict is so excessive as to be conclusive evidence of passion and prejudice on the part of the jury. Much of the argument under this point concerns matters which were not brought to the attention of the trial court by motion for new trial and, therefore, are not preserved for our consideration. It has long been established that the amount of the verdict, standing alone, will not authorize an appellate court to reverse a judgment on the basis of passion and prejudice on the part of the jury. See Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157; Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189; Skadal v. Brown, Mo., 351 S.W.2d 684; Hartz v. Heimos, Mo., 352 S.W.2d 596, and Stubbs v. Kansas City Terminal Railway Company, Mo.App., 427 S.W.2d 257. Such action may be taken by the trial court but not by the appellate court on the sole basis of the amount of the verdict standing alone. In the case at bar, the trial court has refused to take this action and on the basis of the transcript before us, we will not set aside the judgment. Even though not preserved, we have carefully considered appellant's contentions as to allegedly improper testimony, errors in instructions, and improper argument, and conclude that they do not demonstrate that the jury was actuated by passion and prejudice in returning its verdict for plaintiff. The cases cited by appellant concerning mere excessiveness

rather than passion and prejudice, are not persuasive.

Finding no reversible error, the judgment for plaintiff is affirmed.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.