## BOWLES, Adm'r, v. NELSON–RICKS CREAMERY CO.

No. 1408.

District Court, D. Idaho, E. D.

July 27, 1946.

Karl Jeppersen and C. V. Boyatt, both of Boise, Idaho, for plaintiff.

H. L. Mulliner, of Salt Lake City, Utah, and Ralph H. Jones, of Pocatello, Idaho, for defendant.

CLARK, District Judge.

This action is brought by 'Chester Bowles, Administrator, charging the defendant, Nelson-Ricks Creamery Company, with sales of Swiss cheese at prices in excess of the ceiling price during the period between December 31, 1944, and October 13, 1945, in violation of Section 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 901 et seq. and particularly, maximum price Rule Regulation 289 (9 FR 5140) effective May 17, 1944, fixing maximum prices for certain dairy products; alleging that under Sec. 27 of said regulation that the maximum price at which cheese makers or cheese factories may sell Swiss cheese not contained in tubs or boxes is 32.75 cents per pound, plus a transportation allowance of 2.19 cents per pound.

This is denied by the defendant, and in addition it objects to the complaint on the grounds:

1. That the complaint does not show approval of the Secretary of Agriculture to the issuance of the regulation or to the bringing of the action.

The case has finally been submitted on a stipulation of facts which is as follows:

"It Is Hereby Stipulated herein by and between the parties hereto by their respective attorneys that the above case may be submitted to the Court upon these stipulations, as follows:

"1. The defendant may have its objection that the complaint does not state a cause of action for the reason that it is not shown that amendment 16 to Revised Maximum Price Regulation No. 289 was approved by the Secretary of Agriculture; and, separately, the objection that it is not shown that written approval of the Secretary of Agriculture for the bringing of this action was obtained as provided by Section 903(e) of the Act.

"2. It is stipulated that the sales of Swiss cheese, as set up in plaintiff's Bill of Particulars, were made by the defendant to the persons therein named. That the amount of overcharges set forth in said Bill of Particulars amounted to $2779.62 may be reduced in the sum of $380.00 to the claim of $2399.62. Whether there is such overcharge or any overcharge depends upon whether the sales were made from an operation which should be classified under Section 27(a) (i) of Amendment 16, RMPR 289 as cheese factories or cheese makers as contended by the plaintiff, or whether the sales were made from the operation as primary wholesalers defined in Section 27(c) (i) RMPR 289 as contended by the defendant. It is stipulated that if the sales were made from an operation which comes under the classification of primary wholesaler that there was no overcharge.

"3. It is stipulated that Nelson-Ricks Creamery Company owns or operates five factories at which cheese is made in the State of Idaho and that it so owned and operated them in the period between December 31, 1944 and October 13, 1945, the period within which the sales herein involved were made. That one of these plants was at Richfield, 190 miles from Rexburg; another at Victor, 60 miles from Rexburg; another at Driggs, 50 miles from Rexburg; another at Ashton, 27 miles from Rexburg. It is further stipulated that the cheese from all of these factories was hauled to a refrigerated storage warehouse at Rexburg. It is the position of the defendant that the sales therefrom come under Section 27(c) (i). It is the contention of the plaintiff that the sales from this operation should not come under this classification for the reason that the cheese, including the cheese here involved, was assembled from the plants owned by the defendant. It is further stipulated with reference to the defense of a primary wholesaler (27)(c) (i) that the sales here involved were made to wholesalers, retail distributing warehouses, retail stores,

or commercial, institutional, or Federal or non-Federal governmental users. It is stipulated that in this operation, and the sales from this operation, the plaintiff does not contend that the defendant did not comply, and qualify, under Sec. 27(c) (i) and (i), (a), (b), (c), (d), (e) and (e)(ii).

"4. It is stipulated that the defendant in this operation at Rexburg prior to December 31, 1944 had purchased and assembled and handled and sold, with the cheese from its own plants, different kinds of cheese, including Swiss cheese, from other persons. That during the period here involved it offered to purchase such cheese for such handling and sale. That during approximately the first seven months of this period, due to limited market conditions, no other cheese was purchased. That during approximately the last five months of this period other cheese was purchased and assembled, handled and sold as above described. The purchases of other cheese in this period did not include Swiss cheese. The plaintiff contends that this paragraph of the stipulation is immaterial on the issue involved.

"On the question as to whether the overcharge, if any there was, was neither willful nor the result of failure to take practical precautions, it is stipulated as follows:

"That the defendant is a Utah corporation and its principal office and place of business is at Salt Lake City, Utah. That whenever price schedules were made, or changes therein were made, by the office of Price Administration, that the officers of this company contacted the District Price Attorney at Salt Lake City, Utah, and discussed with him and obtained from him information and his opinion as to the classification of their operations and the prices at which they were entitled to sell from these various operations, including the operations at Rexburg. That after Amendment 16 to RMPR 289 they called upon the District Price Attorney and discussed the matter, including the operation at Rexburg, and also discussed with him, prior to the sales here involved, the question as to their being under the classification of primary wholesalers. Even though the cheese assembled was from their own plants, they

obtained from the said Price Attorney of the Price Administration, the opinion that they were under the classification of primary wholesaler in this operation, and that they could charge the prices authorized under the definition of a primary wholesaler. Sales were made pursuant to advice of Price Attorney. The request for this opinion and the opinion were oral."

■ Prior approval of the Secretary of Agriculture, under Sections 3(a), (e) and (f) was not required for commodities such as cheese processed from farm products and his prior approval to the filing of this action was not necessary.

The real question in this action is; can the defendant's operation in the sale of this cheese be classified as sales by a "Primary Wholesaler" as defined by Section 27(c), (i) of RMPR 289 as contended by the defendant? Or should its operation be classified under "Cheese factories" or "Cheese makers" under Section 27(a) (i) of the regulations?

There is no question under the stipulation of facts presented to the Court that the cheese in question was all produced from the defendant's factory and that the defendant was a cheese maker; that the cheese was handled at a refrigerated storage warehouse at Rexburg, Idaho, and that all sales were made from such warehouse and not direct from the factories; that the sales were made to the persons named in the plaintiff's bill of particulars, and that the amount of overcharge was the sum of $2,399.62, provided the sales were made from an operation which should be classified under Section 27(a) (i) of Amendment 16 RMPR 289 as "Cheese factories" of "Cheese makers" but if the sales were made from an operation of the defendant that could be classified as "Primary Wholesaler" defined in Section 27(c) (i) RMPR 289, there is no overcharge.

■ It is very apparent that the defendant operates cheese factories and makes cheese; after the cheese is made, the defendant transports it to a central warehouse and sells it from there. During the period charged in the complaint in this action there was no Swiss cheese sold from the warehouse except cheese that was made in

its own factories. In other words, the cheese in question here was manufactured by the defendant. It did not purchase this cheese. It was selling its own product. So, in the first instance it was, under the law and the rules and regulations made thereunder, a manufacturer of cheese. Can we say that by transferring the cheese so made to a central warehouse and wholesaling from this point that its status would change to that of a Primary Wholesaler?

"Primary" means "first in origin, time, thought or intention". "First in order of advancement." "That which is first in rank, dignity or importance". So if we use the word primary with this definition in mind, it cannot be said that the wholesaling of the cheese in this matter was "Primary", because the defendants were first, makers of cheese, and it could not change to that of Primary Wholesaler unless they could qualify under the definition of Primary Wholesaler as provided in Section 27(c)—(ii) RMPR 289, this defines a "Primary Wholesaler" as follows:

" * * * (c) definitions. (1) 'Primary Wholesaler' is a person who purchases or receives cheese from two or more cheese factories or cheese makers and who sells or delivers to wholesalers, retailers, distributing warehouses, retail stores, or commercial, industrial, institutional, federal, or non-federal governmental users.

"(i) Provided however, that no person shall be considered a primary wholesaler with respect to any cheese sold by him unless with respect to that cheese, he meets all of the following requirements:

"(a) He must own or lease and maintain a refrigerated warehouse or segregated specific space in a refrigerated warehouse.

"(b) Such warehouse or warehouse space must not be leased, rented, or in any other way procured from or furnished by any person (including such person's principal, agent, partner, employee, subsidiary, trustee, associate, or affiliate) from whom he purchases or receives cheese or to whom he sells or delivers cheese.

"(c) He must actually assemble the cheese sold by him by unloading it from its carrier, physically placing it in the warehouse where it must come to rest and by re-moving it from the warehouse by loading it on a carrier.

"(d) Within the warehouse he must grade the cheese in accordance with legal requirements, or in the absence of such requirements in accordance with customary industry practices. He must also paraffin (if not already paraffined) or otherwise prepare the cheese for shipment.

"(e) He must bear and pay for all labor costs involved in the warehousing of the cheese, and in the handling of such cheese into, within, and out of the warehouse.

"(ii) Provided, further, That no person shall be considered a primary wholesaler as to any cheese sold to a processor for processing."

(c) (1) Defines a "Primary Wholesaler" as a person who purchases or receives cheese from two or more cheese factories or cheese makers. Can it be said that the defendant in taking its own cheese from its own factories and storing it in its own warehouse, purchased or received the cheese in question? Purchase means "acquisition by giving an equivalent in money or other exchange value." "That which is bought with money". Receive means "To get as a result of delivery, transmission or communication". It would be a very strained construction to say that you can purchase from yourself or that you can receive from yourself.

To purchase or receive cheese from two or more cheese factories or cheese makers, requires a transaction between two or more parties or persons. The defendant fails to change its status from a cheese maker to a Primary Wholesaler by changing its own product from one building to another by designating one a factory and the other a warehouse when there is no change in the ownership and no change in the possession.

We also find the following in subdivision (b) "Warehouse or warehouse space must not be leased, rented or in any other way procured from or furnished by any person (including such person's principal, agent, partner, employee, subsidiary, trustee, associate or affiliate) from whom he purchases or receives cheese, or to whom he sells or delivers cheese." Here the warehouse is

owned by the maker of the cheese, the defendant, and if it claims that it purchases or receives the cheese from itself then it is not a Primary Wholesaler because this is forbidden by this definition.

The defendant has not met the requirements so as to qualify as a Primary Wholesaler under the regulation. Primarily, under the facts in this case, the defendant is a manufacturer of cheese.

The Court is satisfied that the defendant acted in good faith and that the overcharge was not wilfull and that the judgment should only be entered for the amount of the overcharge.

Counsel for plaintiff will prepare the necessary findings of fact, conclusions of law and decree, in accordance with the rules.