The HAMILTON FIRE INSURANCE COMPANY, a Corporation, (Plaintiff) Appellant,

v.

A. J. CERVANTES, d.b.a. A. J. Cervantes and Company, (Defendant) Respondent.

No. 29072.

St. Louis Court of Appeals. Missouri.

April 19, 1955.

Motion for Rehearing or for Transfer to Supreme Court Denied May 13, 1955.

Chopin & Boisaubin, Alfred L. Boisaubin, St. Louis, for appellant.

Frank E. Morris, Robert L. Schneider, Albert Lebowitz, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action at law brought by The Hamilton Fire Insurance Company against A. J. Cervantes, d. b. a. A. J. Cervantes and Company, an insurance agency, to recover $3,634.81 in advance commissions paid to defendant but claimed by plaintiff not to have been earned by him. Defendant filed a counterclaim for $5,543.99 for monies and commissions claimed by defendant to be due from plaintiff and unpaid. The case was tried in the Circuit Court of the City of St. Louis on jury waiver, resulting in a judgment against the insurance company on its petition and for the agent on his counterclaim in the sum of $5,543.99 plus $665.28 interest, aggregating $6,209.27. From this judgment the insurance company has appealed to this court.

On November 1, 1950 the parties entered into contracts for the payment by the company to the agent of guaranteed commissions of 30% of net premiums (gross premiums less cancellations) on ordinary automobile insurance policies and 17½% of net premiums on taxicab policies written by the agent. On March 1, 1951 the parties entered into a new arrangement with reference to the sale of automobile policies by executing a printed form of contract labeled "Agency Agreement" to which was attached another typewritten document, likewise dated March 1, 1951, styled "Addendum to Agency Agreement." By the terms of the Agency Agreement the company authorized the agent to write business for it and agreed to pay the agent as compensation for business placed with the company a commission as of June 30, 1951 and each month thereafter based on earned premiums, according to the formula prescribed in para. 2(a) thereof, as follows: "From 85% of the cumulative pro rata earned premium, plus salvage and subrogation, shall be deducted the total of losses and loss expense paid and outstanding, and commission previously paid to the Agent. If the remainder be a plus figure the Company shall pay the Agent the amount of such remainder forthwith as commission. Should the remainder be a minus figure such minus shall be carried over to subsequent

accountings." Para. 2(b) provided that "The Agent shall not be obligated to return any commissions received, except in the case of an error in calculations of reserves for losses outstanding as at the time of an accounting." The Agency Agreement also provided for termination by either party at any time upon written notice to the other. The Addendum to Agency Agreement recited that the parties had entered into the Agency Agreement, and the desire of the parties to amend the Agency Agreement "to include a provision whereby the Agent may receive an advance commission for a limited period of time," and contained the following provisions:

"1. The terms and conditions of the aforesaid Agency Agreement are incorporated herein except as hereinafter specifically set forth.

"2. The Agent will receive the following schedule of advance commissions from the Company, said advance commissions to be based upon net written premiums (premiums less return premiums):

"25% On premiums written during the months of March, April, May and June, 1951.

"20% On premiums written during the months of July, August, September and October, 1951.

"15% On premiums written during the months of November and December, 1951, and January and February, 1952.

"10% On premiums written during the months of March, April, May and June, 1952.

"5% On premiums written during the months of July, August, September and October, 1952.

"3. No advance commissions will be paid to the Agent by the Company after the month of October, 1952.

"4. It is understood and agreed that the advance commissions paid to the Agent by the Company as above set forth shall be deducted by the Company before making any commission settlements with the Agent as provided under Paragraph (2) (a) of the original Agency Agreement to which this Addendum is attached."

After the contractual arrangements of March 1, 1951 were entered into the agent wrote total premiums of $46,996.18 on which there were cancellations of $10,280.74, leaving net premiums in the sum of $36,715.44 on which the agent was entitled to receive and did receive advance commissions of 25%, amounting to $9,178.86.

Various policies written under the contracts of November 1, 1950 and March 1, 1951 were canceled, entitling policyholders to refunds of unearned premiums. The company was obligated to repay the portion of such unearned premiums it had received, being the total unearned premiums less commissions thereon. The agent was obligated to return to the company the commissions received by him on these unearned premiums. The agent, with the knowledge and consent of the company, refunded these unearned premiums to policyholders.

The agent quit selling insurance for the company after June 1, 1951. The accounts between the parties remained to be settled with respect to premiums due the company on policies previously sold, commissions due the agent thereon, and amounts due the agent for return premiums paid by the agent. On the agent's demand and on December 4, 1951 the company paid the agent $4,987.81 on account of return premiums refunded by the agent through September, 1951 and agreed to account for its share of any premiums returned by the agent thereafter. No claim was made by the company at that time that the agent was indebted to it in any amount.

During the time the agreements of March 1, 1951 were in force (i. e., from March 1, 1951 to June 1, 1951) the total of losses and loss expense paid and outstanding and commissions previously paid exceeded 85% of the cumulative pro rata earned premium, plus salvage and subrogation. The parties are in agreement on all items of their ac-

counting save and except the item of advance commissions of $9,178.86 above referred to, which item, if credited to the agent, leaves $5,543.99 due the agent but which, if not credited to him, results in a liability on the part of the agent to the company in the sum of $3,634.81. No commission settlement has been made under the agreements of March 1, 1951 and none of the advance commissions received by the agent under this contract were paid as the result of an error in the computation of reserves for losses outstanding as of the time of an accounting. On November 15, 1951 the agent demanded of the company the sum of $5,543.99. On March 26, 1952 the company demanded of the agent the sum of $3,634.81. Both parties refused to pay, and this suit resulted.

We have jurisdiction for the reason that there cannot be simultaneous recoveries by both plaintiff and defendant on petition and counterclaim. A finding in favor of either party would require a finding against the other. The issues arising on petition and counterclaim have been merged in and resolved by the finding in defendant's favor on his counterclaim in the sum of $6,209.27. The jurisdictional question here is the same as that presented in Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920.

This appeal involves the construction of the contract between the parties to determine whether the agent is liable to repay or account to the principal for advance commissions paid to the agent in excess of earned commissions. The contract consisted of two instruments, a printed Agency Agreement and a typewritten Addendum, both dated March 1, 1951. The terms and conditions of the printed instrument were incorporated in the typewritten instrument. The two instruments pertain to and were executed as part of one transaction, and are to be read together and construed with reference to each other. Isaac T. Cook Co. v. Craddock-Terry Co., Mo. App., 109 S.W.2d 731; 17 C.J.S., Contracts, § 298, p. 714. The intention of the parties is to be ascertained from both instruments taken together as an entire instrument. It

appears that the parties contemplated a long-term association for the sale by the agent of policies of insurance to be issued by the principal. The agent's compensation was not a sum certain, but was to be derived entirely from commissions on sales made by him. During the first twenty months of the arrangement, presumably during the time the parties contemplated that it would take to build up the business to profitable proportions, the company was obligated to pay the agent certain percentage commissions on net premiums, designated advance commissions, on a descending scale, the percentage decreasing from 25% during the first four-month period to 5% during the fifth four-month period. After the expiration of twenty months no advance commissions were to be paid to the agent. Beginning June 30, 1951 and each month thereafter an accounting was to be made on the basis of earned premium experience, whereby from 85% of the cumulative pro rata earned premium, plus salvage and subrogation, there was to be deducted the total of losses and loss expense, and commissions previously paid the agent. The amount of the advance commissions paid was to be "deducted" by the company. Para. 4, Addendum. The agent was to have the balance for his compensation, if a plus figure. If a minus figure, it was to be carried forward to subsequent accountings. There was no provision requiring the agent to repay to the company any excess over advances earned or to account therefor, except by way of deduction in making settlements.

Considering the contract as a whole it does not appear to have been the intention of the parties that the agent be personally liable for the return to the principal of advance commissions paid to him in excess of commissions due on earned premiums.

In the first place, para. 2(b) of the printed instrument specifically relieves the agent of any obligation to return to the principal "any commissions received * * *." Para. 2(b) became and was a part of the provisions relating to advance commissions by virtue of the fact that para. 1 of the typewritten instrument specifically

provided that "The terms and conditions of the aforesaid Agency Agreement are incorporated herein * * *." (Exceptions in both paragraphs are irrelevant.) There is no occasion to apply the rule that ambiguous terms are to be construed most strongly against the party preparing the contract, because the term "any commissions received" is clear and unambiguous. Broader, more inclusive language could hardly have been selected. The word "any" is all-comprehensive and the equivalent of the words "every," State ex inf. Rice ex rel. Allman v. Hawk, 360 Mo. 490, 228 S.W.2d 785, and cases cited 228 S.W.2d 788, and "all." Dohring v. Kansas City, 228 Mo.App. 519, 71 S.W.2d 170. "Receive" means to take or accept, come into the possession of, or acquire. Webster's New International Dictionary, 2d Ed. "Receive" has also been defined as to get or obtain as a result of delivery, transmission or communication. Funk & Wagnalls Standard Dictionary; Spragg v. Prudential Ins. Co. of America, 50 Ohio App. 451, 198 N.E. 585; Bowles v. Nelson-Ricks Creamery Co., D.C.Idaho, 66 F.Supp. 885. "Received" does not mean "earned," as appellant would have us declare. "Any commissions received," as used in this contract, means every and all commissions received by the agent, and includes advance commissions as well as earned commissions.

Secondly, under the rule expressio unius est exclusio alterius the express provision that the advance commissions paid the agent shall be deducted by the company before making any commission settlements under para. 2(a) of the printed instrument excludes any possible interpretation that the agent was obligated to repay the advances otherwise than out of those commissions. Larson v. Watzke, 218 Wis. 59, 259 N.W. 712. By the contract itself the right of the company to recover the advance commissions is limited to a particular fund, namely, the commissions computed under the contract formula, to be realized in a particular way, namely, by deductions or credits in accountings. That fund was never realized. An agreement permitting a deduction of ad-

vances cannot be enforced as a promise to be personally bound for the repayment of the advances in case of a failure to accumulate a sufficiency in the fund. There is nothing to show that such failure was the fault of the agent, or was attributable to any action or inaction on his part, Hibbs-Kiefer Hat Co. v. Schneiderhan, 236 Ky. 470, 33 S.W.2d 304, or that the agent was guilty of a breach of contract so as to disqualify him from earning the advances.

Appellant construes the advance commissions as a loan made by the principal to the agent, to be liquidated when the agent has earned the advance commissions, but to be due the company in the event the advances exceed what was earned. We cannot accept this construction. There is nothing in the contract to indicate that the agent is a borrower or that the company was lending him any money. The contract contains no express or implied agreement on the part of the agent to repay the advance commissions. Indeed, the advance commissions were "advances" only in the sense that they were to be paid in advance of settlements, out of net premiums paid on policies actually sold by the agent. They were not advances in the sense that the company was paying cash to the agent in advance of the performance of services.

As we construe the contract the parties specifically agreed that the agent should not be liable to return any commissions received, including advance commissions, and further agreed that only out of earned commissions would the company be entitled to recoup the excess of advance commissions paid to the agent over commissions earned by him. That was the sole source of reimbursement. The contract expresses nothing else, and implies nothing more. There was no reference to any personal liability. If the parties had intended that the agent assume a personal liability as a borrower, or otherwise, it would have been a simple matter to so provide in the contract. The lack of any such provision is highly significant. See North Western Mut. Life Ins. Co. v. Mooney, 108 N.Y. 118, loc.

cit. 124, 15 N.E. 303, 13 N.Y.St.R. 99; Louis Auerbach v. Ramer, 80 Misc. 645, 141 N.Y.S. 848.

The instant case differs from the great majority of cases involving the accountability of agents for the excess of advances over commissions earned. In most of them there is either an express or implied agreement on the part of the agent to repay the excess or else the contract is silent on the subject of repayment. In Missouri State Life Ins. Co. v. Allen, Mo.App., 251 S.W. 751, the agent for an insurance company was sued upon two promissory notes which he had executed to the company for an amount exceeding the sum agreed to be advanced to him under the agency contract. The agent was held liable on the ground that by executing the notes he had expressly promised to repay the amount of the advances, but the court expressed doubt whether defendant would have been liable to repay the advances in the absence of an express obligation to repay them. When the contract contains no agreement, express or implied, on the subject of repayment, the great weight of authority supports the view that where advances are to be charged to and deducted from the commissions agreed to be paid to the agent as they accrue the principal cannot recover from the agent the excess of advances over commissions earned, and the principal is limited to the commissions actually earned for recoupment of the excess. 165 A.L.R. 1367; 57 A.L.R. 33; 44 C.J.S., Insurance, § 157, p. 832; Larson v. Watzke, supra; Valdosta Roofing & Supply Co. v. Lawrence, 1953, 89 Ga. App. 168, 79 S.E.2d 10; Selig v. Bergman, Wash., 1953, 260 P.2d 883. The nonliability of the agent to repay the excess is indubitable in the instant case, in which the matter was settled by express agreement of the parties that the agent was not obligated to return any commissions.

By the terms of the contract the company is bound to give the agent credit for the commissions he sought by way of counterclaim and the latter is not responsible in this action for the return of the advance commissions. Accordingly, the judgment of the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., and WALTER E. BAILEY and SAM C. BLAIR, Special Judges, concur.