INSURANCE, INC., a Corporation and John B. Meehan, d/b/a John B. Meehan & Co., Plaintiffs-Appellants,

v.

James L. SANDERS, Defendant-Respondent.

No. 31399.

St. Louis Court of Appeals.

Missouri.

April 21, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied May 18, 1964.

Robert Nagel Jones, Gentry, Bryant & Sheppard, Arnot L. Sheppard, James Corcoran, St. Louis, for plaintiffs-appellants.

Andrew P. Deschu, Joseph W. Toeniskoetter, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

This is an action at law brought by the joint operators of an insurance agency to recover from their former employee an alleged indebtedness of $3,438.12. At the close of plaintiffs' evidence the court sustained defendant's motion for a directed verdict and entered a judgment for defendant. From that judgment plaintiffs appealed.

In their petition plaintiffs pleaded that they and the defendant had entered into a written contract on or about September 1, 1957, which was set forth in verbatim. In brief, the agreement provided that defendant was to enter plaintiffs' employ as an insurance salesman; that defendant was to be paid " * * * on the basis of 50% of the gross commissions, on new and renewal business produced by Second Party (defendant)"; that commencing immediately plaintiffs would advance to defendant $250 per month " * * * which shall be charged to and applied against whatever commission earnings Second Party shall accomplish * * *"; that plaintiffs would purchase a policy of insurance on the life of defendant, in which initially it was to be named beneficiary, and would advance the premium for the same, which was likewise " * * * to be charged to and applied against Second Party's commission earnings * * *"; and that defendant was to produce a minimum of $2,000 in earned commissions annually, " * * * otherwise First Party (plaintiffs) shall have the option of declaring a breach and electing to terminate this agreement." There was no other provision regarding the duration or termination of the contract, except that in the last paragraph it was stated: "It is understood and agreed by the parties hereto that a permanent, lasting arrangement be-

tween the parties is desired and contemplated; * * *." Plaintiffs further alleged that defendant had breached the terms of the agreement in that (1) he had attempted to file his license with another broker; (2) he had attempted to compete with the insurance business of the plaintiffs; (3) he had failed to produce the minimum annual commissions of $2,000; and (4) defendant did not promote the sales operations of the plaintiffs' business. It was then averred that "In account between the parties, there are the following debits and credits" and the plaintiffs then set forth an account which showed that plaintiffs had advanced $4,612.73 for the monthly advances and insurance premium; that it had credited defendant with $1,174.61 for commissions earned and certain other credits; and that the balance was $3,438.12. Despite the latter figure, the prayer was for a judgment for $4,205.09, together with interest. Defendant admitted the execution of the contract but denied all other averments.

Plaintiffs produced evidence to sustain the execution of the contract by the parties, and the various items of the account set forth in their petition. Their witness Meehan testified that during the last several months preceding December, 1958, defendant didn't appear regularly at plaintiffs' office, and that after December 1 defendant failed to show up at all.

Plaintiffs appear to have pleaded one theory of their right of recovery in their petition, and to be now relying on an entirely different theory in their brief. As we have stated, they alleged that defendant had breached the contract in the four particulars we have enumerated. They introduced no evidence that the defendant had attempted to file his license with another broker, or that defendant had attempted to compete with the insurance business of plaintiffs. Their evidence did show that defendant had failed to produce the minimum annual earned commissions of $2,000, but the only right of relief given to plaintiffs by the contract for such a failure on the part of defendant was the right to terminate the

agreement. As to the fourth breach alleged, that defendant did not promote the sales operation of the plaintiffs' business, the only evidence introduced was that during the several months preceding December 1, 1958, defendant failed to appear in plaintiffs' office regularly. There was nothing in the contract which required defendant to appear in plaintiffs' office at any given time—or, for that matter, at all. Nor was there any evidence that plaintiffs had directed defendant to appear, or that they had complained to him about his lack of appearance. Further, defendant's irregular appearance would not justify an inference that defendant was failing to make a diligent and faithful effort to solicit and sell insurance. Defendant was employed to·sell insurance and he may well have preferred to use his time to call on prospects towards that end instead of devoting it to lolling around in plaintiffs' office. So far as the breaches of contract alleged in the petition were concerned they were totally unsupported by any evidence, and as to such averments the court's action in sustaining defendant's motion for a directed verdict was therefore right and proper.

However, plaintiffs did plead that they had advanced to or for defendant the sum of $4,612.73, and that the earned commissions and other credits to which defendant was entitled was only $1,174.61, so that the excess of advances· over commissions was $3,438.12. While totally unrelated to any of the four breaches alleged, it may be gleaned from the petition that plaintiffs are seeking to recover that sum from defendant. In their brief plaintiffs appear to recognize, at least tacitly, the general rule we followed in a somewhat similar case, Hamilton Fire Ins. Co. v. A. J. Cervantes, Mo.App., 278 S.W.2d 20, 25, where we said: " * * * When the contract contains no agreement, express or implied, on the subject of repayment, the great weight of authority supports the view that where advances are to be charged to and deducted from the commissions agreed to be paid to the agent as they accrue the principal

cannot recover from the agent the excess of advances over commissions earned, and the principal is limited to the commissions actually earned for recoupment of the excess. * * *" And see Labatt's Master & Servant, 2nd Ed., Vol. 2, Sec. 461, pp. 1358, 1359; 165 A.L.R. 1367; 57 A.L.R. 33; 44 C.J.S. Insurance § 157, p. 832; Richmond Dry Goods Co. v. Wilson, 105 W.Va. 221, 141 S.E. 876, 57 A.L.R. 31; Larson v. Watzke, 218 Wis. 59, 259 N.W. 712; Hibbs-Kiefer Hat Co. v. Schneiderhan, 236 Ky. 470, 33 S.W.2d 304. The contract in the instant case expressly provided that the advances to be made by plaintiffs were to be charged to and applied against whatever commission earnings defendant produced. There is no reference anywhere therein to any personal liability on the part of defendant. Thus by the very terms of the contract the right of plaintiffs to recover advances was limited to the specified fund which was to be realized in a particular way. As we pointed out in Hamilton, under the rule expressio unius est exclusio alterius such an express provision excludes any possible interpretation that the employee was obligated to pay the employer otherwise than out of earned commissions.

Plaintiffs seek to avoid the force of the foregoing general rule on two theories. The first is that the parties construed the contract as creating a personal liability for the excess on the part of defendant. The basis for this argument is the testimony of plaintiffs' bookkeeper that each month up to August 31, 1958, she had deducted from the $250 advanced to defendant a sum sufficient to cover Federal income, Social Security, and City of St. Louis earnings taxes; that the plaintiffs' auditor advised her that such deductions should have been made only on the commissions earned; that instead of the total of $278.24 deducted only $20.88 should have been withheld; that defendant's account was credited with the difference, $257.36; and that defendant was then asked to and did sign the following statement dated November 20, 1958: "Since Overpayment of

Withholding & Social Security Taxes was withheld from my paycheck from January 1 to August 31, 1958 I will not claim credit at the end of the 1958 Year. The adjustment was made against my Drawing Account." We can not agree with plaintiffs' argument that the statement amounts to a construction of the contract interpreting the advances as loans, rather than income; nor with its contention that as loans, defendant was under a personal obligation to repay them. All that the statement amounted to was an effort on the part of plaintiffs to rectify what its auditor advised had been a mistake on its part. There is no promise therein on the part of defendant that he will repay advances other than out of commissions earned. The rule advanced by plaintiffs, that the construction put upon a contract by the parties thereto may be considered as an aid to the court in determining its meaning is applicable only when the contract is ambiguous. It is so stated in Leggett v. Missouri State Life Ins. Co., Mo., 342 S.W.2d 833, 852, cited by plaintiffs. The same case also holds that if the terms of a contract are clear and unambiguous, as is true in the instant case, the contract will be enforced or given effect in accordance with its terms, and without resort to construction to determine the intention of the parties; and (342 S.W.2d p. 851) " * * * In such case the construction of the parties, if at variance with the written terms, will not be followed * * *."

Plaintiffs' second theory is that the foregoing general rule is not applicable when the employee violates or abandons his contract. Plaintiffs cite Johnson v. Quayle & Son Corp., 236 App.Div. 351, 257 N.Y.S. 874, 876, in which the court, after citing the general rule, stated, " * * The rule is different, however, when *during the time the drawing account was operative* the employee has been guilty of such a breach of the agreement as to disqualify him from earning the advances. In such a case there is an implied duty to repay such advances * * *." (Emphasis sup-

plied.) It was this failure to enhance the fund, during the period of employment, to which we referred in Hamilton Fire Ins. Co. v. A. J. Cervantes, Mo.App., 278 S.W. 2d 20, 24. As was true in the case we cited, Hibbs-Kiefer Hat Co., 236 Ky. 470, 33 S.W.2d 304, and as we have heretofore shown is true in the instant case, plaintiffs produced no evidence showing that during the time defendant was receiving the advances he failed to exercise his best efforts to sell insurance and thereby increase the earned commission fund. As to abandonment of the contract, in the case cited by plaintiffs on that feature, Kupfer v. Holtzmann, Sup., 88 N.Y.S. 362, the contract of employment was for a fixed period of time. In the instant case the contract did not contain any provision as to its duration nor any terms obligating the defendant to remain in plaintiffs' employ for a definite period of time. All that it contained was an expression that a " * * * permanent, lasting arrangement between the parties is desired and contemplated * * *." Such language does not indicate that the defendant was bound to work for plaintiffs for the rest of his life, but only at will. Minter v. Tottle-Campbell Dry Goods Co., 187 Mo. App. 16, 173 S.W. 4. A contract will be held to be one for life only where the intention that it is to be for life is expressed in clear and unequivocal terms. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 270.

Plaintiffs' final complaint is that the judgment is void because it is not based on a verdict by the jury. As proof that no verdict was returned by the jury plaintiffs point to that part of the judgment in which it is recited that, " * * * at the close of all the evidence, defendant's motion for a directed verdict filed and submitted herein having been duly and fully considered is now by the Court hereby sustained. Thereupon the Court finds in favor of defendant, and against the Plaintiff on plaintiff's cause of action." The remainder of the judgment is in conventional form. Plaintiffs point out that the foregoing recital indicates that no verdict was rendered

by the jury. If that be the fact it is difficult to understand why, throughout their motion for a new trial, plaintiffs repeatedly referred to "the verdict" and to the court's supposed error in "directing a verdict * * *." What is even more important, we note that the plaintiffs did not object to the failure of the court to have the jury return a verdict, and that nowhere in their motion for a new trial did the plaintiffs complain of the supposed error which they now seek to raise on appeal. It would therefore appear doubtful whether the point is before us for review. Civil Rule 83.13 (a), V.A.M.R., In re Alexander's Estate, Mo., 360 S.W.2d 92. In any event, we may not reverse a judgment unless the error committed materially affected the merits of the action. Civil Rule 83.13(b). While it has been said that a verdict is the sole basis of the judgment to be entered in a jury case, Thorne v. Thorne, Mo., 350 S.W.2d 754, it will be noted that in those cases in which the rule is stated the jury was performing its normal function of determining contested issues of fact. But the determination of whether the plaintiffs' evidence is sufficient to make a submissible case for the jury upon a motion for a directed verdict is a judicial function, and if the evidence is insufficient there is nothing for the jury to decide. Nash v. Normandy State Bank, Mo., 201 S.W.2d 299. And while the court should direct the jury to return a verdict in favor of the defendant, under those circumstances " * * * the jury does not exercise any measure of discretion, but acts only formally, perfunctorily, and ministerially as the instrument by which the court prepares the orderly record which will support the only judgment that can lawfully be rendered in the case. * * *" State ex rel. Witte Hardware Co. v. McElhinney, 231 Mo.App. 860, 100 S.W.2d 36, 38. In such a case, though the act of returning a directed verdict purports to be that of the jury, it is in legal effect the act of the court itself. So much so that if the jury refuses to follow the court's instructions and return a verdict for the defendant as directed by the court, the court may discharge the jury and cause judgment to be entered up in defendant's favor without the formality of a directed verdict. State ex rel. Witte Hardware Co. v. McElhinney, supra. It follows that while the court in the instant case should have formally directed the jury to return a verdict in favor of defendant, its failure to do so did not materially affect the merits of the action and is not prejudicial or reversible error.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, Acting P. J., ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.