Marcus SHEPHARD, d/b/a Shephard Agency, Plaintiff-Respondent,

v.

Paul E. HUNTER and Dorothy L. Hunter, his wife, Defendants-Appellants.

No. 9426.

Missouri Court of Appeals, Springfield District.

April 3, 1974.

**236**

No appearance for plaintiff-respondent.

Harold L. Henry, West Plains, for defendants-appellants.

BILLINGS, Judge.

Plaintiff sued defendants to collect a real estate commission. At the conclusion of all of the evidence the trial court sustained plaintiff's motion for a directed verdict and entered judgment against defendants for the sum of $690.00. We affirm.

Defendants, husband and wife, were the owners of residential property near Willow Springs, Missouri, and in August of 1970, after they had discussed the matter, the wife signed a one-year listing agreement with plaintiff. The agreement authorized plaintiff " . . . [T]o procure a purchaser, ready, willing and able to buy . . . " the property for a commission of 6% of the purchase price. Thereafter, the defendants rented the property to people by the name of Woodruff and considered withdrawing the listing but decided to continue it.

Within the time period of the listing agreement plaintiff's employee located prospective buyers by the name of Anderson. The Andersons executed an "Offer to Purchase with Acceptance" which the defendants signed on August 5, 1971. The purchase price was fixed at $11,500.00 and the contract provided: "The undersigned Seller, hereby accepts the above offer and agrees to sell and convey the above described property on the terms and conditions set forth." This contract also provided "For and in consideration of the services furnished, the undersigned [defendants] agrees to pay The Real Estate Agency named above [plaintiff] a commission as set forth in the Listing Agreement." Possession of the property was to be delivered to the Andersons "on or before September 15, 1971," but by mutual consent this was extended to September 30. Defendants executed their warranty deed to the property to the Andersons under date of August 30, 1971, but since they were unable to remove the Woodruffs from the premises by September 30 the transaction was never consummated.

Defendants contend the court erred in taking the case from the jury at the close of the evidence and entering judgment for the plaintiff pursuant to his motion for directed verdict. The various reasons advanced by the defendants in support of their contention will be considered in the order set forth in their brief. We have not been favored with a brief on behalf of the plaintiff and while it is true that under present Supreme Court Rules there is no penalty for such failure, we again condemn such practice. McCutchen

v. Moore, 494 S.W.2d 684 (Mo.App.1973). Plaintiff's dereliction leaves us dependent upon defendant's presentation and our own research. With the caseload confronting us we would remind successful litigants and their counsel that briefs in their behalf are part of the proper and orderly appellate process.

Defendants argue that in this jury-tried case they denied certain allegations pleaded by the plaintiff and since it was necessary for plaintiff to prove these allegations and plaintiff offered oral testimony in support thereof, and defendants in turn countered with oral testimony, the jury should have been permitted to pass upon the credibility of the witnesses and the weight to be accorded their testimony.

■ We recognize the power and authority of a trial court to direct a verdict for the plaintiff either at the close of the evidence or in response to after-trial motion in the situation where there is no real factual dispute and when the facts establish as a matter of law a right to that verdict in the plaintiff. Such a result occurs very seldom, as the cases indicate, and then only in what have been referred to as unusual or exceptional cases. This because our appellate courts have not been prone to thus limit the basic function of the jury as the fact-finding unit in litigation. Alaska Federal Savings & Loan Ass'n v. Hoffman, 485 S.W.2d 118, 120 (Mo.App.1972).

■ As defendants suggest, the reluctance to direct verdicts for plaintiffs rests upon the jury's preeminent role in judging the credibility of witnesses. Thus, "where plaintiff has the burden of proof on an issue . . . and proof of such issue depends upon oral evidence . . ., plaintiff is not entitled to a directed verdict regardless of whether or not such oral evidence is controverted, because the credibility of witnesses and the weight to be accorded their testimony are for the jury and plaintiff must shoulder the risk of nonpersuasion." M. F. A. Cooperative Ass'n of Mansfield v. Murray, 365 S.W.2d 279, 287

(Mo.App.1963). Likewise, a jury may return a verdict in favor of the defendant upon plaintiff's uncontradicted and unimpeached oral testimony. Williams v. Ford Motor Co., 494 S.W.2d 678, 682 (Mo.App. 1973).

Defendants assert they were entitled to a jury determination of the following issues raised by plaintiff's petition: (1) whether plaintiff was a licensed real estate broker; (2) whether the plaintiff and the defendants entered into a listing agreement; (3) whether plaintiff produced purchasers ready, willing and able to purchase defendant's property, and whether such purchasers entered into a contract with defendants; (4) whether defendants and the prospective purchasers agreed to extend the closing date of the contract; and (5) whether defendants have paid plaintiff a commission.

■ Plaintiff's status as a licensed real estate broker was judicially admitted in the separate answers, filed by defendants. Thus no jury question was presented and consequently this issue constitutes no impediment to the court's properly granting plaintiff's motion for a directed verdict.

■ The listing agreement was admittedly signed by Mrs. Hunter (wife) but not by Mr. Hunter (husband). The document was received into evidence. At least three grounds are apparent upon which the court could have held Mr. Hunter liable, as a matter of law, on the agreement. The agency of one spouse to act for the other "may be shown by direct evidence or by facts and circumstances which would justify a reasonable and logical inference that [the one] was empowered to act for [the other] or that [the other] ratified [the one's] unauthorized acts." Rimer v. Hubbert, 439 S.W.2d 5, 7 (Mo.App.1969); Wenneker v. Frager, 448 S.W.2d 932, 937 (Mo.App.1969). Mr. Hunter testified he had discussed the listing of the property with his wife before she signed the agreement with plaintiff and thereafter concurred in the decision to continue the list-

ing. The trial court could well conclude that Mrs. Hunter acted for both defendants in signing the agreement or that Mr. Hunter subsequently ratified the decision to list the property with the plaintiff. Lastly, the trial court could have found Mr. Hunter liable on the agreement by way of estoppel. By signing the contract with the purchasers [Andersons] procured by plaintiff, Mr. Hunter accepted the benefit of the listing agreement. We would also observe that the contract with the purchasers recognized the listing agreement with plaintiff and expressly provided for a commission to the plaintiff. " '. . . In short, he is estopped to grasp the benefits of that contract with one eager hand, while thrusting aside its burdens with the other.' " Magenheim v. Board of Education, 347 S.W.2d 409, 420 (Mo.App.1961), quoting City of St. Louis v. Davidson, 102 Mo. 149, 14 S.W. 825, 826 (1890).

■ The contract between the defendants and the prospective purchaser was in evidence and defendants admitted their signatures thereon in their respective answers. The contract was proved by documentary evidence and it is generally recognized that "in the event the seller accepts the purchaser and contracts with him as such, the issue of the purchaser's being ready, willing and able to perform is eliminated from the broker's claim for his commission." Kelly v. Craigmiles, 460 S.W.2d 577, 581 (Mo.1970). The fact that the price called for in the contract with the Andersons differed from that stated in the listing agreement would not exonerate defendants of their obligation to pay plaintiff's commission. E. A. Strout Realty Agency, Inc. v. McKelvey, 424 S.W.2d 98, 103 (Mo.App.1968). Here again, the court could properly direct a verdict for plaintiff on this issue.

■ Defendants' purported fourth issue for jury consideration deals with the extension of the closing date between the defendants and the Andersons and such an agreement between these parties does not bear on plaintiff's cause of action. Plaintiff's right to recover the agreed commission matured upon the showing that he had produced parties ready, willing and able to purchase defendants' property on terms acceptable to them. Hulse v. Criger, 363 Mo. 26, 247 S.W.2d 855, 860 (banc 1952); Alcorn v. Moore, 386 S.W.2d 907, 910 (Mo. App.1965).

■ On the final issue advanced by defendants as requiring jury consideration, that of payment of the commission, both plaintiff and his employee were unequivocal in their testimony that no commission had been paid and such was the clear import of Mrs. Hunter's testimony that she "didn't feel that we should [pay the commission] because [the property] wasn't sold." She further agreed to the following question, propounded on direct examination: "And if it had been closed, then you would have been willing to have paid the commission, is that correct?" Under such circumstances the trial court properly could have ruled that non-payment of the commission was not in issue in the case. Cf. John Deere Co. of St. Louis v. Davis, 335 S.W.2d 686, 689 (Mo.App.1960).

■ "All of the basic facts upon which plaintiff's cause of action rested having been established either by documents, the authenticity and accuracy of which were unquestioned, or by [defendant's testimony] the trial court did not err in directing a verdict for plaintiff." Commercial Credit Corp. v. Joplin Auto. Auction Co., 430 S.W.2d 440, 444 (Mo.App.1968). Assuming that the jury below would have been totally incredulous with respect to plaintiff's oral evidence, the contracts were nonetheless established by *defendants'* pleadings and evidence. Thus, "It is not necessary to submit for finding by the jury questions of fact established by testimony of both proponent and his adversary." Gottlieb v. Hyken, 448 S.W.2d 617, 620 (Mo.1970). As was said in Prevost v. Wilkin, 358 S.W.2d 417 (Mo.App.1962) at 419: "If the opponent, that is the party

not having the burden of proof, admits either in his pleadings . . . or *in his individual testimony* on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him . . . ." Defendants' point is denied.

■ In their brief the defendants belatedly seek to raise the issue that plaintiff was acting in a dual capacity for the defendants and the prospective purchasers and argue this issue should have been submitted to the jury therefore barring the sustention of plaintiff's motion for directed verdict. "The defense of dual agency—to defeat a broker's compensation—is based on misconduct, fraud, or bad faith that results in prejudice to his principal." Smith v. Piper, 423 S.W.2d 22, 26 (Mo.App.1967). "And, since fraud is never presumed, it has been held that the defense of dual employment must be specifically pleaded." Shepley v. Green, 243 S.W.2d 772, 777 (Mo. App.1951). Neither of the defendants' answers pleaded this defense and they therefore would not have been entitled to submit such an issue to the jury by way of an instruction thereon. Hartford Accident and Indemnity Co. v. List, 424 S.W.2d 761, 768 (Mo.App.1968).

■ Defendants further contend that the ground stated in plaintiff's motion for a directed verdict was insufficient. The ground advanced by plaintiff and acted upon by the trial court was that "the uncontradicted evidence when viewed in the light most favorable to defendants would entitle plaintiff to a verdict." It is true that in considering the propriety of a motion for directed verdict by a plaintiff the evidence is to be viewed in the light most favorable to the defendants, disregarding any unfavorable evidence or inferences. Alaska Federal Savings & Loan Ass'n. v. Hoffman, supra. We find no fault with plaintiff's stated ground or the court's ruling thereon and the contention is denied.

Defendant's final attack on the action of the trial court is that the judgment of the court below is invalid because it is not based upon a verdict, directed or otherwise. Defendant argues that the court treated the case like a court-tried case in entering a judgment for the plaintiff because the jury was not directed by the court to return a verdict for plaintiff.

■ We are admonished by Rule 84.13(b), V.A.M.R., "that no judgment be reversed except for error 'materially affecting the merits of the action'." Bohning v. Hegerfeld, 488 S.W.2d 297, 300 (Mo.App.1972). The de facto rendition of a verdict by a jury under a peremptory instruction is at most a purely ministerial act. State ex rel. Witte Hardware Co. v. McElhinney, 231 Mo.App. 860, 100 S.W.2d 36, 38 (1937). "In legal contemplation there is no difference between the action of the court in peremptorily instructing a verdict and the rendering judgment on such verdict and the action of the court in dismissing the jury and rendering judgment." 88 C.J.S. Trial § 249, p. 591. Thus it has been held that the trial court was justified in entering a judgment without a formal verdict where the jury failed or refused to comply with a peremptory instruction. Kahn v. Prahl, 414 S.W.2d 269 (Mo.1967). We believe defendant's contention to be without merit. What was held in Insurance, Inc. v. Sanders, 378 S. W.2d 249, 254 (Mo.App.1964) is equally applicable to the instant case: "It follows that while the court in the instant case should have formally directed the jury to return a verdict in favor of [plaintiff] its failure to do so did not materially affect the merits of the action and is not prejudicial or reversible error."

Accordingly, the judgment is affirmed.

STONE and TITUS, JJ., concur.

HOGAN, C. J., not participating.