Bryan Keith WILLIAMS, a minor, by and through his next friend, Vera Williams, Plaintiff-Respondent,

v.

William BOONE, Defendant-Appellant.

No. 32440.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied March 17, 1967.

Eaker & McGuire, Robert W. Henry, Clayton, for defendant-appellant.

Samuel Goldblatt, Satz & Ponfil, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

This appeal arises out of an action for damages resulting from plaintiff, a minor two years of age at the time this incident occurred, being struck by defendant's automobile. The judgment appealed from is for $4,250.00. Plaintiff submitted his case upon the theory defendant failed to keep a careful lookout. The defendant contends the trial court erred in overruling his motion for directed verdict offered at the close of all the evidence in the case. The facts that follow in this opinion are those bearing upon that issue and are stated in the light most favorable to plaintiff.

The physical facts surrounding the area where this accident took place are important to the decision. This accident took place in the City of St. Louis on Clara Street just north of its intersection with Wabada. There were automobiles parked along the east side of Clara just north of the corner of the intersection. The first of these was just north of the corner and with the second parked immediately in front of it. There was no space between these automobiles as they were parked. A third was parked with its rear end one and

one-half car lengths from the front of the second and with at least two other automobiles parked close together ahead of it. There was testimony that a car length was 17½ feet. We will hereafter refer to the automobiles parked at the east curb of Clara by their number with the first being that closest to the Wabada intersection. Defendant was driving north on Clara at a speed of about five miles per hour. The right side of defendant's automobile was about one foot from the left side of these parked automobiles.

There are certain other facts about which there is no dispute. Defendant was looking straight ahead and traveling at about five miles per hour. He did not see the plaintiff until impact with the right front of his automobile. Defendant brought his automobile to a stop immediately, continuing, according to the evidence, only about one foot after impact.

There is heated controversy as to plaintiff's location and movements immediately prior to impact. The evidence with regard to this issue is fragmentary at best and complicated by the fact that one of the witnesses whose testimony is of importance to that issue repeatedly changed her story. What happened was that the defendant and Mrs. Smith, his daughter, were called by the plaintiff in his case in chief. Mrs. Smith was riding with her father on the day of this occurrence and was seated in the right front seat of the automobile. On direct examination she was asked if she had signed a statement regarding this accident and replied that she had not. She was then asked whether she saw the plaintiff prior to the impact and answered that she did not nor did she yell to her father to watch out for the little boy. Her further testimony was that there was no open space between the cars parked at the east curb of Clara at all. She was then questioned as to whether or not she remembered giving certain specific answers to a person who came by her home to investigate this accident and who took a statement from her which she signed. Upon

being confronted with this statement and being questioned sentence by sentence as to its contents, her testimony was that while she remembered many of the unimportant answers such as where she lived, her name, and whether she was in the car, she did not remember giving any of the answers read to her from the statement which were contradictory to the evidence stated above that she did not see plaintiff prior to impact. However, upon cross-examination she was asked if she had not seen the plaintiff before the accident and her answer was "Yes, I seen him." Out of the presence of the jury and while in recess the court and counsel discussed the situation created by this witness's contradictory testimony. The court directed certain pertinent remarks to the witness cautioning her against committing perjury and admonishing her to tell the truth when she returned to the stand. When the recess was over and in the presence of the jury the witness was again asked if she saw the plaintiff before the accident. She stated she did see him and admitted this testimony was in contradiction to that she had previously given and to the information she had given counsel during his investigation and preparation of the case. In response to questions she then testified defendant was driving about five miles per hour when a boy ran out from the east side of the street; she told her father "Look out"; she had no estimate of her father's speed at the time of impact; and that the defendant's automobile was moving at impact but stopped immediately thereafter. Her further testimony was that the cars along the east side of Clara were parked in such a way that there were no spaces between them. The confusing nature of her testimony on the issue in which we are specifically interested may be illustrated by the following excerpt from her cross-examination: "Q. I want you to tell the Court and jury where your father's automobile was located with reference to the boy when you first saw him. A. Well— Q. How many feet separated the boy and the nearest part of your fath-

er's car when you first sighted the boy? A. I would say— Q. Mrs. Smith, didn't you tell me in the preparation of this lawsuit that the front of your father's car was half a car-length? A. That's right. MR. GOLDBLATT: Your Honor, I'm going to have to object to that, he is leading the witness and putting words— THE COURT: He may. MR. McGUIRE: I am impeaching my witness. THE COURT: It's not your witness; it's Mr. Goldblatt's witness and you are cross-examining. This is not a party. You may resume your questions. MR. McGUIRE: I would like the record to further show impeachment here and on the basis of surprise, Mr. Reporter. Q. You told me, Mrs. Smith, from the outset of my preparation of this lawsuit that the front of your father's car was no greater distance than one-half car-length from that youngster when you first saw him, is that correct? A. That's right. Q. You further told me that the youngster was running from east to west and passing between two parked cars at the east curb, did you not? A. That's right. Q. Didn't you further tell me that at the time you first sighted the boy he was at a point opposite the left front and in motion westwardly? A. That's right. Q. And you yelled, 'Look out, dad'? A. That's right. Q. And he applied the brakes immediately? A. Yes. Q. And was stopped or nearly so at the time of this accident? A. Yes." In any event, this witness gave no other testimony placing the plaintiff prior to his entry into the street nor any that related to the manner in which plaintiff came into the path of defendant's automobile. Neither did she give other testimony enabling the jury to fix plaintiff's position when she first saw him; that is, whether he was at the curb or at the left front of the line of parked automobiles, or whether he was at the back of the third parked automobile or at the front of the second or someplace in between, or whether he came out from between other automobiles more closely parked as defendant contended. Her testimony failed to describe the manner in which plaintiff was traveling as to whether his path was straight, diagonal, erratic or whatever except that he was going east to west.

The defendant's theory upon this issue was dependent upon the testimony of the defendant's witness Hutson who was operating an automobile following defendant. He testified that he witnessed this accident; that his automobile was "right behind" defendant and that there was a space of about one car length between the second and third parked automobiles. Of course, plaintiff is entitled to so much of defendant's evidence as aids his case and is not in conflict with his basic theory. Cognizant of this rule, plaintiff places particular reliance upon Hutson's testimony that he saw one child run across the street about a second before the plaintiff followed, and his affirmative answer to the question: "From where you were a car behind Mr. Boone's car, you could have seen the boy, is that correct?" (Read in context it is clear the words "the boy" in this question referred to plaintiff.) However, Hutson went on to make it clear while there was a space between the second and third parked automobiles of about one car length where he could see to the curb, he did not see plaintiff as he traveled from the curb to the left side of the parked automobiles but only saw plaintiff when he came out into the lane of traffic from the left corner of an automobile parked at the curb; that the plaintiff ran out from between the fourth and fifth parked automobiles and not from the vacant space between the second and third; that plaintiff was not then as tall as the fender of the fourth automobile; that there was not "over a foot" between the left side of the fourth parked automobile and the right side of defendant's automobile; and that when stopped the front of defendant's automobile was about one foot past the rear of the fifth automobile parked along the east curb of Clara.

The evidence given by the police officer who investigated this accident and who was called by the defendant was that when

stopped after impact defendant's automobile was thirty to forty feet north of Wabada Street with its front end five to seven feet in front of the front end of the second automobile parked along the east side of Clara.

The only other evidence that bears upon this issue was that at the time of this occurrence plaintiff was two years old. The only testimony as to his height at the time of this occurrence other than that given by Hutson to the effect plaintiff was not so tall as to be seen over the fender of the parked automobiles is contained in the following excerpt from the transcript. The plaintiff's mother was on the stand. "Q. I think you probably would be the best person in the world to indicate to me, the Court and the jury, to walk out here, please, and place your hand at a level above this floor that would indicate the height of your son on the day of the accident; show us about how tall he was. A. (Witness indicates.) Q. He was that high off the ground on the day of this accident? THE COURT: Her hand is not as high as yours by any means. Before then you had placed your hand at eye level? Q. About that high? THE COURT: See how many inches above the level of that table. Maybe counsel can agree. MR. GOLDBLATT: About two and a half inches above the table." The height of that table was never otherwise referred to in the evidence. The physician who treated plaintiff testified he did not take any measurement of plaintiff's height.

We hold the defendant's contention has merit and, under the facts as they appear from this transcript, must be sustained. The burden was on the plaintiff to show the facts and circumstances essential to the maintenance of the negligence charged. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316; Harris v. Lane, Mo.App., 379 S.W.2d 635 [1–7]. It has been repeatedly held that it is error to submit a case based upon alleged failure to keep a lookout unless there is evidence from which

the jury could find that in the exercise of the required degree of care the party so charged could have seen the person or object before he did see it. Levin v. Caldwell, Mo., 285 S.W.2d 655; Hawkeye-Security Ins. Co. v. Thomas Grain Fum. Co., Mo. App., 407 S.W.2d 622. In the instant case the plaintiff did not bear this burden in that the evidence in this case fails to show defendant could have seen plaintiff before he did.

In so stating we accept the plaintiff's contention the evidence of the investigating police officer as to the position of the front of defendant's automobile as it was stopped after traveling one foot after impact, when combined with favorable excerpts taken from the testimony of other witnesses, would authorize the jury to find the plaintiff ran out into defendant's path from the space of one and one-half car-lengths existing at the east curb of Clara at a point from four to six feet in front of the second parked automobile. However, there is no evidence from which the jury could find the defendant could have seen the plaintiff prior to the latter's emergence from the left side of the line of parked automobiles. The plaintiff insists defendant could have seen him as he left the curb of Clara. We cannot so hold. There was no testimony from which the jury could infer that the defendant, by looking over the front of the second parked automobile, could have seen plaintiff, a two-year-old of unspecified height, as he left the east curb of Clara or at any time prior to his reaching the left side of the second parked car. The only evidence on this issue was diametrically opposed to that theory.

Plaintiff seeks to establish that the witness Smith, a passenger in defendant's automobile, first saw him when he was one-half car length from defendant's automobile. As is made clear in the excerpt from the testimony given by the witness Smith set out in this opinion, she was not testifying as to facts. Except for the question "How many feet separated the boy and the

nearest part of your father's car when you first sighted the boy?"—a question which for some unimaginable reason she was never given time by counsel to answer—the answers upon which defendant now seeks to rely were given to questions directed to an entirely different matter; i. e., the attempt to attack her credibility by asking her what she had said on a previous occasion. The very form of each question so shows. Each time the question asked her was, in effect, "Did you so state earlier?" or "Did you tell me this on another occasion?". Each time her answer was in effect "Yes, I did so tell you" or "Yes, I did so state". Read in the context of all of her testimony and having in mind that this witness had repeatedly changed her version of this accident during the trial, it is clear this witness was never asked to testify as to the facts stated in the questions and, of course, did not do so. It was apparent to all that instead of testimony being elicited from her as to the relative positions of the parties, the credibility of the witness was being attacked. Counsel clearly understood that is what he was doing and indicated this understanding by his statement that by these questions he intended to show "impeachment". This record does not support plaintiff's contention the witness Smith testified plaintiff was half a car-length from defendant's automobile when she first saw him.

This judgment must be reversed and the cause remanded to the trial court with directions to enter its order sustaining the defendant's motion for directed verdict offered at the close of all the evidence in the case.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded to the trial court with directions to enter its order sustaining the defendant's motion for directed verdict.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.