**Richard GOUSETIS and Geraldine Gousetis, Appellants,**

**v.**

**John Anthony BANGE, Respondent.**

**No. 52727.**

Supreme Court of Missouri, Division No. 1.

March 11, 1968.

Morris A. Shenker and Frank B. Green, Jr., St. Louis, for appellants.

Lloyd E. Eaker, Clayton, for respondent.

HIGGINS, Commissioner.

Action for $25,000 damages for wrongful death. Plaintiffs appeal from verdict and judgment for defendant.

Richard Michael (Rickey) Gousetis, plaintiffs' 8-year-old son, died as a result of a collision between his bicycle and an automobile owned and operated by defendant. The casualty occurred at approximately 6:00 p. m., July 10, 1964, at the intersection of Lindbergh Walk and Lindbergh Drive in the 7600 block of Lindbergh Drive in Richmond Heights, Missouri. Rickey rode his bicycle north on Lindbergh Walk and, after entering the eastbound-traveled portion of that street, was struck by the right front of defendant's eastbound automobile.

Appellants seek a new trial contending reversible error in giving Instruction No. 3 and, in addition to an attempted defense of Instruction 3, respondent contends that error, if any, in the instruction is harmless because he should have had a directed verdict at the close of all the evidence in that plaintiffs failed to show any negligence of defendant was the proximate cause of plaintiffs' injury and plaintiffs' son was guilty of contributory negligence as a matter of law.

Lindbergh Drive is a generally east and west street in a residential neighborhood. It consists of two eastbound traffic lanes with a total width of 20 feet curb to curb and two westbound lanes, also of 20 feet total width. The east and west lanes are separated by a 50-foot parkway. The eastbound portion of the street is straight and fairly level in the vicinity of the casualty. Lindbergh Walk is a concrete walkway running generally north and south connecting four other east-west streets. It is for public pedestrian travel and intersects and crosses Lindbergh Drive at a point about midway of the 7600 block. There was no stop sign at the crossing. The part of the walk involved runs south to north between Hiawatha and Lindbergh

Drive and lies between a house on the east side of the Walk at 7616 Lindbergh Drive and one on the west side at 7628 Lindbergh Drive. 7628 Lindbergh Drive was occupied by a Graham family whose son Paul was a playmate of plaintiffs' deceased son. The walkway had a regular street name, "Lindbergh Walk," on a standard located at the south curb of the street. A white picket fence paralleled the east side of the Walk. It was 24 inches high at its north or street end near the sidewalk and 26 inches high at the end nearest the house at 7616 Lindbergh Drive. There were some shrubs along the west side of the Walk between the sidewalk and the Graham house at 7628 Lindbergh Drive. As one came north on Lindbergh Walk to Lindbergh Drive the grade was downhill.

The building line for homes fronting the south side of Lindbergh Drive was fairly uniform at 40 to 46 feet south of the south curb of the street. The Graham home was set back 40 feet from the south curb and the garage attached to the east side of the house was set back 46 feet. The surface of the driveway to Graham's garage was higher than Lindbergh Walk which it paralleled. The maximum difference of 26 inches occurred near the building line.

The weather was clear and the sun was shining at the time of the casualty. Defendant, aged 18, was driving his 1953 Chevrolet east on Lindbergh Drive with a friend, Robert Stewart, a front-seat passenger. As he approached Lindbergh Walk, defendant was driving in the eastbound lane nearest the parkway at a speed of 20 to 25 miles per hour.

Rickey was four feet, five inches tall and was coasting northward and downgrade on Lindbergh Walk toward Lindbergh Drive on his sister's 26-inch, 2-wheel bicycle. William E. Trampier and his son Craig were at this time riding bicycles westwardly in the westbound lanes of Lindbergh Drive approaching the cross-

ing of Lindbergh Walk. Rickey became visible to them as he cleared the front building line of the two houses adjacent to the Walk. His head was "down" as he coasted toward the street.

Defendant first noticed Rickey when his automobile reached a point in the street "about even with the walkway." At that time Rickey's speed was about nine miles per hour and he was a foot north of the south curb of the street. Immediately the front of the right headlight and hood struck the front wheel of the bicycle. The impact threw the boy about 15 feet ahead and clear of the car. Defendant applied his brakes immediately on impact and brought his automobile to a stop within 15 feet without running over the boy's body.

Defendant had lived all his life at 7659 Lindbergh Drive, four houses west of the Walk and on the westbound side of the street. He was aware of the likelihood of children in the area and recalled riding his bicycle on the Walk as a child. He did not look toward the building line for children on the Walk on this occasion. He could not say why he did not see Rickey until he was just north of the south curb. He and Robert Stewart returned to the scene the following day and examined it because he could not imagine how Rickey could have gotten out into the street so suddenly without his seeing him. His vision was not obscured by any parked cars at the south curb.

Plaintiffs' evidence on the effect on visibility of the shrubbery on the west side of Lindbergh Walk consisted of photographs which Mrs. Gousetis testified accurately depicted the condition of the shrubs on the day of the casualty. Defendant had testimony unsupported by photographs to the effect that the shrubbery was taller, denser, and more continuous than the condition depicted by the photographs. They were evidence that the shrubbery shown by the pictures would not obscure persons using the Walk from the vision of an eastbound motorist.

Also in evidence were photographs taken from 50 and 85 feet west of the Walk showing an eastbound motorists' opportunity to see the Walk and street when looking to the east and southeast. These, too, were evidence that persons using the Walk would not be obscured to a motorist at those distances by either the shrubbery or the elevation difference between the Walk and the driveway and terraces to the west.

■ This evidence is sufficient for the jury to say whether defendant, by keeping a proper lookout, could have seen plaintiffs' decedent in time to have avoided the collision. Support for this conclusion may be found in many cases but because of its many similarities, see Hildreth v. Key, Mo.App., 341 S.W.2d 601, 605–608[3–14].

In support of his contention that plaintiffs failed to show any negligence of defendant to be the proximate cause of their injury, respondent cites Zalle v. Underwood, Mo., 372 S.W.2d 98, 102[3]: "Negligent failure * * * to keep a proper lookout cannot be established in the absence of substantial evidence from which a jury could find that in the exercise of the highest degree of care he could have seen (decedent) * * * in time thereafter to have taken effective precautionary action"; Harris v. Lane, Mo. App., 379 S.W.2d 635, 639[9]: "Absent evidence as to when and where defendant could have seen plaintiff, and where his automobile was at the time, the charge that defendant failed to keep a proper lookout rests on nothing more than surmise and conjecture"; and Williams v. Boone, Mo. App., 413 S.W.2d 36, 40[3]: " * * * it is error to submit a case based upon alleged failure to keep a lookout unless there is evidence from which the jury could find that in the exercise of the required degree of care the party so charged could have seen the person or object before he did see it."

Respondent's argument is that his view of the walkway was obstructed by terraces,

parked cars, and shrubbery, preventing him from seeing decedent until he came out into the street; that there was no evidence of the bicycle's speed; that there was no evidence to show where his car was when he could first have seen the bicycle, or that he could have seen the boy sooner than he did.

There was evidence depicting and describing the terraces and shrubbery in relation to the Walk from which the jury could find that a motorist in defendant's situation could have seen persons or objects of decedent's height in the 46 feet of Lindbergh Walk running northward from the building line of the Graham house to the street for as much as 85 feet of his approach on Lindbergh Drive to its intersection with the Walk. Defendant himself stated that his vision was not blocked by any parked cars. The 9-miles-per-hour speed of the bicycle was defendant's own estimate, and there was abundant evidence upon which a jury could find that the boy could have been seen sooner by defendant if he had but looked in the direction from which decedent came. In further answer to respondent's argument and in satisfaction of the rules of his citations, the evidence, and particularly that of defendant's stopping within 15 feet after he did see decedent, was sufficient to permit a jury to find that defendant could have taken effective avoiding action if he had but fulfilled his duty to look in such an observant manner as to enable him to see and discover such conditions as one in the exercise of the highest degree of care for the safety of himself and others would be expected to see under like or similar circumstances. Riley v. Young, Mo.App., 218 S.W.2d 805, 808[1]; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 937–938[2–6].

Respondent's continued emphasis that shrubs and terraces prevented a clear view of the decedent is answered in that " 'Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where, the facts being undisputed, different minds might reasonably draw different conclusions from them.' " Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, 13 [1].

Respondent's argument that plaintiffs' decedent was guilty of contributory negligence as a matter of law is that the boy "had his head down" and that such is a conclusive showing that the boy failed in his own duty to keep a lookout.

Rickey did have a duty to keep a lookout but he was not required to look constantly to one side, nor did he need to keep turning his head from side to side, Combellick v. Rooks, Mo., 401 S.W.2d 460, 463[4]. The only evidence on the issue was the testimony of Mr. Trampier that Rickey had his head "down" when he saw him, and different minds might reasonably draw different conclusions from that fact, thus giving rise to a jury question on the matter. Fortner v. St. Louis Public Service Co., supra.

Instruction No. 2 directed a verdict for plaintiffs if the jury found "defendant failed to keep a careful lookout and * * * was thereby negligent." MAI 20.01 and 17.05. Defendant's affirmative defense of contributory negligence of plaintiffs' son was submitted by Instruction No. 3 purporting to be MAI 28.01:

"Your finding under Instruction No. 2 must be for the defendant whether or not defendant was negligent if you believe:

"First, plaintiffs' son Rickey Gousetis failed to keep a careful lookout, and

"Second, their son's conduct was negligence, and

"Third, such negligence of plaintiffs' son directly caused or directly contributed to cause any damage plaintiffs may have sustained."

Appellants argue the giving of Instruction No. 3 was reversible error because it did not follow MAI for submission of a single act of negligence as contributory negligence in that paragraph Second did

not contain any language to refer and restrict the jury's consideration of the general hypothesis, "their son's conduct was negligence," to the specific hypothesis in paragraph First that the son "failed to keep a careful lookout," and that the omission of such reference and restriction gave the jury a roving commission to speculate and base a verdict on whatever conduct the jury felt would constitute negligence on decedent's part.

Under Brown v. St. Louis Public Service Co., Mo., 421 S.W.2d 255, 259[3], "* * * where there is deviation from an applicable MAI instruction which does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation." Instruction 3 contains a deviation. It fails to follow MAI 17.01 and 28.01 for submission of contributory negligence predicated upon a single negligent act and the deviation results in a situation in which the negligence mentioned in paragraph Second is not referred to the negligence in paragraph First, and the jury was thus not restricted to determining whether decedent's conduct was negligent on the single charge of failure to keep a lookout but was given a roving commission. In contrast to Instruction 3 as given, paragraph Second of the submission should have followed MAI 28.01 to read: "Second, plaintiffs' son's conduct, in the respect submitted in paragraph First, was negligent, and * * *."

Even prior to Missouri Approved Instructions, instructions of this nature which submitted specific acts of negligence together with language submitting general negligence and which failed to limit the jury's determination to specific acts of negligence were prejudicially erroneous and grounds for reversal. Endermuehle v. Smith, Mo., 372 S.W.2d 464; Heimos v. Bruce, Mo., 393 S.W.2d 477. For a similar ruling under MAI, see Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622.

Respondent, as the proponent of Instruction 3, attempts to meet his "burden of establishing nonprejudice," Murphy v. Land, Mo., 420 S.W.2d 505, 507[6], citing Hustad v. Cooney, Mo., 308 S.W.2d 647, and Johnson v. West, Mo., 416 S.W.2d 162, both of which are distinguishable. In Hustad v. Cooney, supra, the contributory negligence instruction did not present a roving commission to the jury because it referred and restricted the jury specifically to the negligence "in any manner, as submitted and defined in other instructions herein, and that such negligence was a contributing cause (etc.) * * *." 308 S.W.2d l. c. 650[3]. Johnson v. West, supra, is not in point because it did not deal with failure to have adequate reference and restriction between paragraphs First and Second of an instruction under MAI 17.02. It held only that failure to include "either" before "or" in submitting alternative charges of specific negligence, and use of "on" for "in" any of the submitted respects, did not make the instruction prejudicially erroneous because the instruction retained its sense and was "substantially correct in form and substance." 416 S.W.2d l. c. 164[1, 2].

For error in giving Instruction 3, plaintiffs are entitled to a new trial.

Judgment reversed and cause remanded.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM.
The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY, P. J., and SEILER, J., concur.

STORCKMAN, J., concurs in separate concurring opinion filed.

Concurring Opinion

STORCKMAN, Judge.

In a similar situation I concurred in result only because: "S.Ct. Rule 70.01(c) says the prejudicial effect of an error arising out of a departure from an approved instruction will 'be judicially determined', while the opinion states that 'prejudicial error will be presumed' unless it is made perfectly clear that no prejudice could have resulted." Brown v. St. Louis Public Service Company, Mo., 421 S.W.2d 255, at page 260. My views as stated in Brown have not changed. Furthermore, we are admonished by other decisions of this court and by S.Ct. Rule 83.13(b) that: "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, materially affecting the merits of the action."

Nevertheless, the law now is as declared by this court en banc in Brown v. St. Louis and by it I am bound. Having reiterated my view, I will now and henceforth concur without further ado.